### Matthew Kingman

### *v.*

### Patrick Harmon *et al.*

*Filed at Ottawa January 21, 1890.*

WILL—*what estate devised—whether a vested, or only a contingent interest.* A party provided, by his last will, that all his real estate be reserved for his children (there being three), and "be equally divided among them when the youngest attains the age of twenty-one years, subject to" his wife's dower, and that the proceeds of such property, until that time, be placed at the disposal of the executors, to be used for the support of the wife and the support and education of his children: *Held,* that the devise to the children was not of a vested estate or interest, but of a contingent interest, only, and that until the youngest child arrived at the age of twenty-one neither of such children had any title to the lands which their guardian could mortgage for them.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. T. M. Shaw, Judge, presiding.

This was a bill brought by Matthew Kingman to foreclose two mortgages executed by Patrick Harmon, as guardian of William and Mary Boylan, under two orders or decrees of the county court of Peoria county.    The first mortgage was executed February 26, 1880, given to secure $2000, payable in three years, with eight per cent interest, payable annually. The second was given to secure $925, and was executed March 24, 1881, due February 26, 1883, with eight per cent interest, payable annually.

William Boylan died testate on December 29, 1866, leaving a widow, Maria Boylan, and three minor children,—Charles Boylan, Jr., William Boylan and Mary Boylan.  Patrick Harmon was appointed guardian of the minor children August 3, 1871.    Charles Boylan, Jr., died in the year 1874, intestate, unmarried and without issue.  William Boylan became twenty-one years of age September 5, 1884.  Mary Boylan, the youngest child, became twenty-one years of age June 30, 1888.

The will of William Boylan contained but two provisions, as follows :

"*First*—It is my will that all my just debts be paid.    After paying my just debts it is my will that after reserving a sufficiency for my wife and children, the proceeds of the remainder of my personal property be placed at interest for the maintenance of my wife and children.

"*Second*—It is my will that all my real estate, consisting of the north-east quarter of section thirty-six (36), township eleven (11) north, range eight (8), east of the fourth principal meridian, also twenty acres of timber land in said township, be reserved for my children, and be divided equally among them when the youngest attains the age of twenty-one (21) years, subject to my wife's dower, and that the proceeds of said property, until that time, be placed at the disposal of the executors, to be used by them for the support of my wife and the support and education of my children, any surplus arising from the above to be used for the benefit of the heirs."

On July 22, 1885, William and Mary Boylan and Maria Boylan conveyed the mortgaged premises to Josiah Cratty, and he was joined with Patrick Harmon, guardian, William and Mary Boylan and Maria Boylan, as defendants in the bill.

The answers question the right of Patrick Harmon, guardian, to mortgage the premises,—first, that the will prohibited it; second, the money was not needed or used for the support and maintenance of the minors, but, on the contrary, the money of the estate was wasted in loaning it out to various persons, (John C. Yates, the county judge,) and in buying real estate (lot in Peoria) and building a house on it, and in furnishing Maria Boylan large amounts of money to be used by her in the saloon and grocery business, and in payment of lawyers' fees and costs in needless litigation growing out of the mismanagement of the estate, all of which appellant could have known if he had used due care, and various other charges and specifications, showing there was no necessity of borrowing the money represented by the mortgages.

The court, on the hearing, found and decreed that the mortgages were not valid as against William and Mary Boylan or their grantee, Josiah Cratty, in so far as the interest of these two children were concerned; but the court found that the widow, Maria Boylan, became seized of an undivided one-sixth interest in the mortgaged premises as heir of her son, Charles Boylan, deceased, and as she had executed the mortgages after acquiring such interest, the court decreed a sale of her undivided one-sixth interest, in satisfaction of complainant's mortgages. The decree, on appeal of complainant in the bill, was affirmed in the Appellate Court, and the complainant has brought this further appeal.

Mr. WILLIAM S. KELLOGG, and Mr. JAMES A. CAMERON, for the appellant:

As to the jurisdiction of the county court to foreclose such mortgages, see *People* v. *Loomis,* 96 Ill. 380; *Myers* v. *People,*

67 id. 503; *Weatherford* v. *People*, id. 520; *Wilson* v. *People*, 94 id. 426; *People* v. *Young*, 72 id. 411; *Darling* v. *McDonald*, 101 id. 374.

Messrs. SHEEN & LOVETT, and Mr. M. C. QUINN, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

It is apparent from the record that Matthew Kingman, in making the loans to Patrick Harmon, and in taking the two mortgages to secure the loans, acted in perfect good faith. So far as appears, he had no knowledge that the guardian of William and Mary Boylan was mismanaging or squandering the moneys belonging to his wards, and if there was any way in which he could recover the money loaned without doing violence to the rights of others, he ought, in equity and good conscience, to do so.

It has been claimed in the argument, that the orders or decrees of the county court authorizing the guardian to make the loans and mortgage the lands, ought to be a protection to the complainant. We shall not stop to consider this question. Nor is it necessary to review the evidence and pass upon the conduct of the guardian in the management of the money and property which came into his hands belonging to the wards, as there is another question behind both of these, upon which the decision of the case, in our opinion, must rest,—and that is, whether William and Mary Boylan were seized of the mortgaged premises when the mortgages were executed. If they were not, the mortgages would confer no right or title on the complainant.

William and Mary Boylan derived their title, whatever it was, from the will of William Boylan, their father. In the second clause of the will the testator declared that his lands be reserved for his children, and be divided equally among them when the youngest attains the age of twenty-one years,

* * * and that the proceeds of said property, until that time, be placed at the disposal of the executors, for the support of his wife and the support and education of the children. Under this clause of the will it is plain that the land of William Boylan, consisting of a farm, was placed in the hands of his executors, the proceeds or rents to be used by them for the support of his family and the education of his children, until the youngest child should attain the age of twenty-one, when there should be a division of the lands among the children. Upon looking into the evidence it will be found that Mary Boylan, the youngest child, did not attain the age of twenty-one years until June 30, 1888, while the mortgages were executed, one in 1880, the other in 1881. If the title to the lands vested in the children upon the death of William Boylan, then the mortgages might become liens. If, on the other hand, the devise was contingent, no preceding estate having been created in the property,—the property devised not to become vested until the youngest child attained the age of twenty-one years, —it is plain that the two wards of Patrick Harmon, at the time the mortgages were executed, had no title to the property subject to mortgage.

Jarman on Wills, (vol. 1, p. 733,) in speaking upon this subject, says: "Thus, where a testator devises lands to trustees until A shall attain the age of twenty-one years, and if or when he shall attain that age, then to him in fee, this is construed as conferring on A a vested estate in fee simple, subject to the prior chattel interest given to the trustees; and consequently on A's death under the prescribed age, the property descends to his heir-at-law, though it is quite clear that a devise to A if or when he shall attain the age of twenty-one years, standing isolated and detached from the context, would confer a contingent interest only." What was said by Jarman was .quoted with approval in *Illinois Land and Loan Co.* v. *Bonner,* 75 Ill. 315.

In Williams on Executors, (3d Am. ed. vol. 2, p. 1049,) the author, in the discussion of the question under consideration, says: "If a legacy be given generally, without specifying the time when it is to be paid, it is due on the day of the death of the testator, though not payable till the end of a year next after the testator's death. This delay is merely an allowance of time for the convenience of the executor, and does not prevent the interest vesting immediately on the testator's death. But when a future time for the payment of the legacy is defined by the will, the legacy will be vested or contingent, according as, upon construing the will, it appears whether the testator meant to annex the time to the payment of the legacy or to the gift of it." That author also says: "Two rules of construction have been established to determine the intention: First, that a bequest to a person, payable or to be paid at or when he shall attain twenty-one years of age, * * * confers on him a vested interest, * * * for the words, 'payable or to be paid,' are supposed to disannex the time from the gift of the legacy; second, that if the words, 'payable or to be paid,' are omitted, and the legacies are given at twenty-one, or if when * * * the legatees attain twenty-one, * * * these expressions annex the time to the substance of the legacy, and make the legatee's right to it depend on his being alive at the time fixed for its payment." See, also, Hawkins on Construction of Wills, pp. 232, 233.

In *McCartney* v. *Osburn*, 118 Ill. 408, the testator, after having made certain specific devises, provided that in respect of the residue of his estate, his executors might sell the realty, if they thought advisable, and all moneys received from the sale of real estate, or otherwise, should be put at interest until a final division of the estate. The property was directed to be divided equally between the heirs of A who might be living at the time of division, and B, and the division should not take place until the youngest child of A attained the age of twenty-one years. It was held that the property did not vest un'il

the youngest child of A arrived at the age of twenty-one years. Here the division was to be made among the children when the youngest should attain the age of twenty-one years. The language used clearly annexed the time to the substance of the legacy, and the title to the lands described in the will would not vest in the children until that period arrived.

If we are correct in this construction of the second clause of the will, it is clear that the mortgages executed by the guardian were invalid, and conferred no right upon the complainant, as the wards of the guardian had then no title to the lands embraced in the mortgage.

On the 22d day of July, 1885, Josiah Cratty, one of the defendants in the bill, purchased the mortgaged premises of William Boylan and Mary Boylan, the two surviving children of William Boylan, deceased, and obtained a deed therefor, and it is insisted that he is estopped from denying the validity of the mortgages. The facts relied upon to create an estoppel are, that Cratty prepared the petition to the county court to procure an order to mortgage, advised the complainant that the guardian had a right to mortgage his wards' lands, and that $400 of the money complainant loaned the guardian was paid to Cratty in payment of attorney's fees due him from the mother of the wards. Whether the conduct of Cratty was in every respect right and proper in what he may have said or done when the loan was made, is a question upon which it is not necessary to express an opinion. But as Cratty had no interest whatever in the lands when the mortgages were executed, we perceive no ground upon which the doctrine of estoppel can be invoked. If the mortgages were invalid, on the ground that the title to the lands had not vested when they were executed,—as we have seen they were,—Cratty, at a subsequent day, had the same legal right to purchase the lands that any other person had. If Cratty had acquired title before the mortgages were executed, and if, after acquiring title, he had induced the complainant to accept the mortgages upon

12.—131 ILL.

the assurance that the guardian was authorized to mortgage the lands, then he might have been estopped to deny the validity of the mortgages. But such is not this case.

In the purchase of the mortgaged premises, the evidence tends to show that Cratty retained in his hands $3000 of the purchase money, which he agreed to pay to his grantors when it was ascertained that the complainant's mortgages, executed by Patrick Harmon, guardian of William and Mary Boylan, were not valid as against the grantors, William and Mary Boylan; and it is insisted, as Maria Boylan executed the mortgages, such portion of this $3000 as should go to her should be applied on complainant's mortgages. In the first place, it is not by any means certain, from the evidence, that Cratty agreed to pay any portion of the $3000 to her; but if he had, we are not aware of any rule under which the payment of the money could be stopped and appropriated in another direction.

It is also said, that since the decree William Boylan has died, and that a portion of the $3000 payable to him will descend to Maria Boylan, and that this money should be decreed complainant on his mortgages. Whatever amount of money that may be due to William Boylan at his death, will go to his administrator, to be disposed of according to the statute; and should any portion of the amount, in the end, go to Maria Boylan, we know of no principle upon which it could be held that complainant had any lien whatever on such fund. The mortgage which she had executed created a lien on what title she may have had in the mortgaged lands,—except as to her dower, which had not been assigned,—but the lien embraced nothing more.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*