Dusenberry *v.* Johnson.

JAMES P. DUSENBERRY, executor and trustee of Thomas
Johnson, deceased,

*v.*

JAMES JOHNSON and MARGARET A. JOHNSON.

[Submitted December 24th, 1899.   Decided December 30th, 1899.
Filed March 24th, 1900.]

A testator left $2,000 of the residue of his estate in trust, to be invested and
the income paid to two grandchildren until they became of age, when they
were to be paid the principal, and if one died before majority the other was to
receive the whole; if both died before majority, it was to be paid to their
father.—*Held*, that the legacy to the grandchildren vested on the testator's
death, subject to be devested in favor of their father in case they both died
before majority, and that where both died before majority, but subsequent to
the death of their father, the legacy vested in the survivor, and passed to his
mother, as his next of kin.

Heard on bill, answer and proofs.

The suit is in the nature of an interpleader, brought by the
complainant, executor and trustee of Thomas Johnson, deceased,
custodian of a fund of $2,000, to determine which of two claim-
ants is entitled to it.

The solution of the question depends upon the true construc-
tion of the will of the testator, who died in November, 1882,
leaving two children, Nathaniel (who was married and had two
children, Nathaniel, Jr., and Charles H.), and the defendant
James, who appears to have been the issue of a second marriage,
and to have then been an infant.

After providing for the payment of his debts, the will pro-
ceeds as follows:

"*Second.* I give and bequeath to my beloved wife Mary B. Johnson, all my
household goods and the sum of one thousand dollars, the same to be paid to
her as soon as conveniently can be after my decease, and to be in lieu of all
dower and claim of dower in my real estate.

"*Third.* All the rest and residue of my property, both real and personal, I
give, bequeath and devise to my executors, or the survivor of them, and their

Dusenberry v. Johnson.

successor or successors in trust for the following purposes, to wit: 1st, I direct my executors to invest immediately upon my decease the sum of two thousand dollars and to pay the income thereof at stated and convenient intervals to the guardian or guardians of Nathaniel Johnson and Charles S. Johnson, children of my son Nathaniel Johnson until they respectively become of the age of twenty-one years, to be divided between said children in equal shares, or if one shall die before reaching that age, to the guardian or survivor of them, and when they respectively attain that age, to pay each of said children one thousand dollars of said principal sum; if one only shall live to attain that age, then that one to receive the entire sum of two thousand dollars; and if both shall die before attaining said age I direct that said sum shall be held and disposed of as is hereinafter provided. * * *

"I direct that the interest and income of all the rest of my estate excepting said two thousand dollars, from whatever source arising, shall be paid to my wife during her lifetime. Upon the death of my wife I direct that my executors at their convenience, pay to my son Nathaniel Johnson the sum of two thousand dollars, *and I further direct that if the children of my said son both die before attaining the age of twenty-one years the sum of two thousand dollars above given to them be paid to him.*

"All the rest and residue of my estate whatsoever the same may be, I direct my executors, upon the death of my wife, to pay over and transfer to my son James Johnson, if he be twenty-one years of age, if not, I direct that the interest be paid him, until he reach that age, and then the principal. But if he should die before reaching that age, then I direct that the rest and residue of my estate be divided into two parts, one part to be paid to the children of Nathaniel in equal shares, or to the survivor of them, and the other part to my said son Nathaniel. And I hereby declare that my executors, the survivor of them, their successor or successors shall not be held liable for any mistake of judgment in the management of the trust imposed upon them."

Nathaniel Johnson, son of the testator, and father of Nathaniel, Jr., and Charles, died in the year 1885, and in the lifetime of the two grandchildren, Nathaniel, Jr., and Charles, who both died under twenty-one years of age, without issue, leaving their mother, the defendant Margaret Johnson, their next of kin.

The question submitted is as to the ownership of the fund of $2,000, bequeathed to the two grandchildren.

*Mr. Charles G. Titsworth,* for the complainant.

*Mr. Adrian Riker,* for Mrs. Johnson.

*Mr. Francis J. Swayze,* for James Johnson.

22

Pitney, V. C.

Three questions were argued :

*First.* Was the legacy of $2,000 to the two grandchildren contingent upon their arriving at the age of twenty-one years, or was it vested, subject to be devested in case both died before reaching twenty-one?

*Second.* If vested, what was the effect of the death before the grandchildren, of their father, to whom it was limited, by way of executory bequest, in case of the death of each grandchild before attaining twenty-one?

*Third.* If the legacy was contingent, and never vested in either the two grandchildren or their father, then did it lapse, or was it included within the gift of the residuary bequest to the younger son James, who still survives?

As to the *first* question. I think it quite clear that the legacy vested in the two grandchildren, subject to be devested in favor of their father in case they both died before attaining twenty-one years. The giving of the interest to the grandchildren during their minority shows that the testator, to use the language of Lord Mansfield in *Goss* v. *Nelson, 1 Burr. 227*, attached the contingency to the *time* of the payment, and not to the *substance* of the gift. The authorities on the subject are collected and commented upon by Chief-Justice Green, sitting for the chancellor, in *Gifford* v. *Thorn, 1 Stock. 702* (at *p. 708*), where he says : " Where the interest of the legacy is directed to be paid to the legatee until he receive the principal, or where the legacy is placed in the hands of trustees for the exclusive benefit of the legatee until it is directed to be paid over, the legacy will be deemed vested," citing authorities. And Mr. Justice Potts, speaking for the court of errors and appeals (at *p. 731* bottom, *p. 732* top, quotes Lord Mansfield in *Goss* v. *Nelson*, as follows : " In legacies there is a known distinction between the time being annexed to the *substance* of the gift, or to the *payment*. If complete words of gift direct the executor to pay, the other words only fix the time of such payment ; and then the legacy vests and is transmissible, though the legatee should die before the day of payment, as a legacy given ' to be *paid* at twenty-one.'

But if the time is annexed to the *substance* of the gift, as a legacy '*if*' or '*when*' he shall attain twenty-one, it will not vest before that contingency happens;" also citing *Fonereau* v. *Fonereau, 3 Atk. 645*.

This rule of construction was approved and acted upon by the court of errors and appeals in *Post* v. *Herbert, 12 C. E. Gr. 540,* where some of the numerous authorities are collected by the late chief-justice in speaking for that court.

See, also, *2 Jarm. Wills (R. & T. ed.) 459 et seq.; 2 Wms. Ex. (R. & T. ed.) 527 et seq.; 1 Rop. Leg. \*572 ch. 10, § 3,* second subdivision, and cases there collected ; *Hawk. Wills \*227,* and cases cited ; *Theob. Wills 276,* and cases there cited.

As to the *second* question.  I am of the opinion that the death of the father of the grandchildren during their lifetime did not result in a lapse.  In other words, the death of the father of the two grandchildren in their lifetime prevented the devesting of the legacy by their death before attaining twenty-one years, and that the survivor died vested of it.

This was directly decided by Chancellor Runyon in the case of *Drummond's Executor* v. *Drummond, 11 C. E. Gr. 234.*  In that case there was a bequest to the testator's adopted daughter, Jane, but if she should die without leaving lawful issue, then testator gave all his property to his nephew, " Philip McGran, now living in the city of Augusta," &c.  Jane Drummond lived and attained her majority, but McGran died in the lifetime of the testator.  The chancellor cited in support of his opinion in that case *Den* v. *Schenck, 3 Halst. 34; Jackson* v. *Noble, 2 Keen 590.*  The latter case is quite in point here, for there, the property consisting of both realty and personalty, was given to trustees in trust for the daughter for life, with remainder to her heirs and executor, &c., with a provision that in case she should marry and have no children, then the property was to belong to testator's son, or in case of his son's decease before her death, then to the son's children ; and the son having died in the lifetime of the daughter, leaving no children, it was held that the executory gift over could not take effect, and that the estate was vested absolutely in the daughter.  The difference be-

tween that case and *Drummond* v. *Drummond*, is that in the English case the legatee of the executory bequest survived the testator, while in *Drummond* v. *Drummond* he pre-deceased the testator.

*Jackson* v. *Noble* seems to be quite in point with this, not only upon the question now under discussion, but upon the proposition that the legacy was vested in the grandchildren. To the same effect is *2 Jarm. Wills ( R. & T. ed.) 489.*          ·          ·

The doctrine of *Drummond* v. *Drummond* was adopted 'and followed in *Groves* v. *Cox, 11 Vr. 40* (at *p. 44*).

The result is that the survivor of the grandchildren died vested with the whole legacy, and it belongs to his personal representatives, if any, and if none, to his mother as next of kin.

The case of *Jackson* v. *Noble* was commented upon by Vice-Chancellor Kindersley in *Robinson* v. *Wood, 27 L. J. Eq. 726 (1858),* (also reported in *4 Jur. N. S. 625,* the former the better report). There was there a devise of land to trustees for the benefit of the daughter of the testator during minority, and at her majority to convey to the daughter in fee, with a proviso that in case the daughter should die under twenty-one, leaving issue, then for the benefit of the issue, but if she should die under twenty-one without issue, then upon trust to sell the property and pay the proceeds to a charity. The daughter died without issue before twenty-one, and the question was whether the land went to her heirs-at-law or remained vested in the trustees; and it was held, in obedience to a decision of the court of exchequer chamber, in the case of *Doe, d. Bloomfield,* v. *Eyre, 5 C. B. 713* (assuming that the effect of the devise was to vest the estate in the daughter during her minority, subject to be devested in case of her dying without issue before arriving at maturity), that the fact that the bequest over to the charity was void did not prevent the devesting of the estate from the daughter.

The learned vice-chancellor, in delivering judgment, expressed strong personal dissatisfaction with the rule as laid down in *Doe* v. *Eyre,* and his approbation of the rule in *Jackson* v. *Noble.* He says (at *p. 728*) : " It has been argued that the entire gift over being void, there is nothing to devest the estate from

the original taker, and I confess that I have much difficulty in getting over that reasoning; but I find that the precise question has been brought before the court of common pleas and the court of exchequer chamber. * * * Now, whatever opinions I may entertain upon the point, it is not for me, in the exercise of my functions, to overturn that decision." And further on : "The only other case is that of *Jackson* v. *Noble*, which it is extremely difficult to reconcile with *Doe* v. *Eyre*, by reason of the language there used ; but when it is looked into it will be found that the ground of the decision [in *Jackson* v. *Noble*] was that the contingency there contemplated, on which the gift over was to take effect, had never happened. Of course, if that was the ground upon which the decision was founded, it does not touch the present question, * * * and whatever my opinion might have been but for the case of *Doe* v. *Eyre*, and I confess it is extremely doubtful whether I should have been of the opinion there expressed, I feel myself under the necessity of coming to the same conclusion."

The distinction taken between *Doe* v. *Eyre* and *Jackson* v. *Noble* was that the testator in *Doe* v. *Eyre* must have been presumed to know that the devise over for the benefit of the charity was void and never could take effect. Hence it was argued that he deliberately made a devise over which he knew from the start never could take effect. While in *Jackson* v. *Noble* (and the present case) there was a possibility, from the testator's standpoint, that the bequest over could take effect ; and the inference is that he did not intend that the estate should be devested from his grandchildren except upon the condition that their father was alive at the time of their decease, under twenty-one.

This distinction between *Jackson* v. *Noble* and *Doe* v. *Eyre* is illustrated by the case decided in our courts in dealing with this question, of *Den* v. *Schenck, 3 Halst. 34,* which was a devise of land with an executory devise over, which, after the death of the testator, became impossible by the death of the devisee of the executory devise in the lifetime of the first taker, and it was held that the title became absolute in the first taker.

It is argued against this result that, reading the whole of the present will, the intention of the testator is clear that none of his estate should pass away from his descendants, and that the gift of the residue to his son James amounted to a further disposition of the fund in the contingency which has happened. I am unable to adopt that view. In fact, while I do not find it necessary to decide the third question above stated, namely, whether, supposing the vested interest in the grandchildren was devested by their dying under twenty-one, it lapsed or passed under the residuary clause to the younger son James, I find the question, upon the authorities cited, quite open to doubt.

Upon the question of the intent of the testator, to be derived from a consideration of the whole will, it is worthy of remark that he seems not to have had in his mind a complete scheme for the disposition of his property, for he omits to provide for the quite possible contingency of one or both of his grandchildren dying under twenty-one and leaving issue. If either of them had left issue, the fallacy of the argument just made in behalf of James would be palpable; for its result would be that the fund would have gone to James, to the exclusion of the offspring of the grandchildren.

I will advise a decree in accordance with the above views.