## No. 10,628.

### HIGNETT *v.* SHERMAN, ET AL.

#### Decided March 3, 1924.

Proceeding involving the construction of a will. Judgment for respondents.

### *Reversed.*

1.  WILLS—*Real and Personal Property—Presumption.* Where a will includes both real and personal property in a declaration of trust and in the same language, the presumption is that both are given with the same intent and governed by the same rule.

Vested interests are favored in law, and those rules of construction that are most likely to bring about this result should be enforced.

2.     *Vested Interest.*  Where property was left in trust with income for life to a daughter and remainder to her children, all the children having died after the daughter's death, leaving no heirs other than their father, it is held that the trust estate went to the father, the interest of the children being vested at the death of the testator.

3.     *Construction.*  In construing wills, the fundamental rule is to ascertain the intent of the testator and if the same is not contrary to some positive rule of law, or against public policy, to give it effect.

4.     *Remainders.*  Vested and contingent remainders discussed, defined and the rule applied.

5.     *Children—Discrimination.*  In construing a will wherein the testator left the bulk of his estate to one daughter and her children, the court says: "Dissatisfied heirs or children have no power to make a will for their ancestor, and courts are not invested with such authority."

6.     *Presumption.*  A testator is presumed to know the laws of his state as to descent and distribution.

7.     *Gifts—When Effective.*  Where an immediate gift is to a class of persons, it vests in those of the class in esse at the time of the testator's death, although distribution is postponed to a later period, unless a different intention appears from the context of the will.

8.     *Construction.*  Unless the expressed intention of the testator clearly appears in the will to the contrary, an absolute, rather than a qualified, a vested, rather than a contingent, interest or estate is created.

9.     *Intestacy—Presumption.*  Intestacy is not favored, and a testator is presumed, when he makes a will, to dispose of all his property.

*Error to the District Court of Las Animas County, Hon.
A. C. McChesney, Judge.*

Mr. A. W. McHENDRIE, Mr. B. H. SHATTUCK, for plaintiff in error.

Messrs. HAWLEY & ERICKSON, Mr. EDWIN ANDERSON, for defendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

1. JOHN S. HART died testate. When his will was made, and also at the time of his death, his sole heirs at law were his five children, three sons, Andrew, Nathaniel and Charles, and two married daughters, Mary Riddle and Gertrude Hignett. The will, after providing in the first clause or item for the payment of claims against the estate, in clauses or items 2, 3, 4, and 5, contains specific bequests of $1.00 to each of the three sons and to Mrs. Riddle, and the ones relating to Charles and Mrs. Riddle release and cancel the debts they owe their father. In the 6th clause the residuary estate, consisting of real estate, personal and mixed property, was devised and bequeathed to the testator's executors and trustees, in trust, for the benefit of the daughter Gertrude and her children and the descendants of her children, whether born before or after the death of the testator. At the time of the death of the testator, in December, 1912, all of the children, and the three sons of Gertrude, for whom provision had been made in the will were living. Thereafter in March, 1920, Gertrude died intestate, leaving surviving her, as her sole and only heirs at law, M. P. Hignett, her husband, petitioner in this proceeding, who is still living, and three sons, Ermin, Russell, and Carl. In January, 1922, the three sons met death simultaneously as the result of the same accident. At that time the oldest child was eighteen years of age, the second fifteen and the youngest thirteen. Each child died intestate, unmarried, without issue, and leaving surviving as their only heir at law their father, M. P. Hignett. The will was duly admitted to probate. The sole surviving executor and trustee under the will, John F. Sherman, is ready to make final settlement in the probate proceeding, and distribution of what is left of

the residuary trust estate. Being in doubt as to the distributees he has joined with the petitioner, M. P. Hignett, who claims the property as the sole heir at law of the beneficiaries, and with the other respondents, who claim the property as sole heirs at law of the testator, in asking the district court for a construction of the will which is necessary in order that he may properly and with safety to himself perform his duty in the premises.

The respective contentions of the parties are reproduced here as stated by their own counsel:

"The petitioner contends here, as he did in the Court below, that the right of future enjoyment of said trust estate became vested absolutely in his three children in proportion to their respective interests, upon the death of the testator, subject only to the burden of the life estate held by their mother, with the payment thereof deferred until the youngest child had attained the age of twenty years, and thereby became and was a vested interest, and as such devolved to and became vested in petitioner as the sole heir at law of said children upon their death subsequent to the death of the beneficiary of the life estate and prior to reaching the age of twenty years without surviving issue."

"The respondents, the other heirs and legatees of the said John S. Hart, contend that upon the death of the three children under such circumstances, the bequest to Gertrude and her children lapsed, the trust failed for want of a *cestui que trustant,* and that the trust estate immediately became a part of the estate of John S. Hart, deceased, and as such must be distributed among the heirs at law of the said John S. Hart according to the law of descent and distribution of the State of Colorado."

The trial court sustained the contention of the respondents and ordered the trustee to distribute the trust fund to them. The creation and disposition of this residuary fund, which alone is directly involved here, is made in the 6th item or clause of the will, which, after conferring upon the trustees complete and absolute control and management of the trust estate until the trust terminates, and specifically

directing a conversion, so far as it affects the present controversy, reads:

"I hereby give, devise and bequeath all the rest, residue and remainder of my estate, real, personal or mixed, wheresoever situate whereof I may be seized or possessed or to which I may in any manner be entitled or in which I may be interested at the time of my death, unto my executors and trustees hereinafter named and to their heirs and assigns forever: In Trust Nevertheless as follows:

I hereby further will and direct that my said executors and trustees may pay out of said *Trust Estate or any profits, interest or income therefrom* such sums from time to time as they may determine to be needful or expedient in the maintenance and support of my said daughter Gertrude E. Hart Hignett now of Trinchera, Las Animas County, Colorado, and her family, if my said daughter Gertrude E. Hart Hignett survives me and that said executors and trustees in their discretion may permit from time to time my said daughter Gertrude E. Hart Hignett to use such or all of said Trust Estate then in their hands as they may deem advisable.

And I suggest to my said executors and trustees that it is my desire that my said daughter Gertrude E. Hart Hignett have the sole use of said Trust Estate during her lifetime, however, this suggestion shall not be construed so as to control the actions of said executors and trustees, but they shall exercise and use their best judgment as to such use and possession.

I further will and direct that in case my said daughter Gertrude E. Hart Hignett does not survive me, said executors and trustees may pay out of said *Trust Estate or any profits, interest or income therefrom* such sums from time to time as they may determine to be needful or expedient in the education, maintenance or support of any child or children of my said daughter Gertrude E. Hart Hignett or the descendants of such child or children and any such payment shall be considered as an advancement as hereinafter provided.

I further will and direct that in case my said daughter Gertrude E. Hart Hignett survives me, then upon her death my said executors and trustees may pay out of said *Trust Estate or any profits, interest or income therefrom* such sums from time to time as they may determine to be needful or expedient in the education, maintenance or support of any child or children of my said daughter Gertrude E. Hart Hignett or the descendants of such child or children and any such payment or payments shall be considered as an advancement as hereinafter provided.

I further will and direct that whenever the youngest child of my said daughter Gertrude E. Hart Hignett (notwithstanding such child be born before or after my decease) shall attain the age of Twenty (20) years, then my said executors and trustees shall distribute said Trust Estate and the same shall become vested as follows:

If my said daughter Gertrude E. Hart Hignett be then living, one-half (½) in value of said Trust Estate shall be conveyed, turned over and transferred to her, my said daughter Gertrude E. Hart Hignett and one-half (½) in value of said Trust Estate shall be distributed equally among the children of said Gertrude E. Hart Hignett and the descendants of such children, such descendants taking *per stirpes* and not *per capita.* If my said daughter Gertrude E. Hart Hignett be not then (to-wit, at the time the youngest child of said Gertrude E. Hart Hignett shall attain Twenty (20) years of age), living, said Trust Estate shall be distributed equally among the children of said Gertrude E. Hart Hignett and the descendants of such children, such descendants taking *per stirpes* and not *per capita* and in estimating the share of any beneficiary hereunder, excepting said Gertrude E. Hart Hignett any advancement or payment made to such beneficiary except said Gertrude E. Hart Hignett by said executors and trustees shall be deducted and if such beneficiary was at the time of the receipt by him or her of such payment or advancement of the age of Twenty-one (21) years or more, then interest upon said advancement or payment, at six (6) per cent per

annum shall also be deducted from the share such beneficiary (except said Gertrude E. Hart Hignett) would otherwise receive.

I further direct that in case the law of any jurisdiction in which any of said property is situate does not or will not permit said executors or trustees to postpone the date of distribution of said Trust Estate as hereinbefore provided, or if the provisions or directions of the first two paragraphs of page four of this instrument should for any reason be invalidated or become inoperative as to any or all of said Trust property, then as to any such parcel or parcels, or all of said Trust Estate said executors or trustees shall upon the death of my said daughter Gertrude E. Hart Hignett, if she survives me, and in case she, my daughter Gertrude E. Hart Hignett does not survive me, then upon the death of her youngest child that does survive me, distribute among and the same shall become vested in, the children of said Gertrude E. Hart Hignett and the descendants of such children such descendants taking *per stirpes* and not *per capita.*

So far as possible a yearly statement of the condition of said Trust Estate shall be prepared and rendered by my executors and trustees upon the request of and to the person or persons at the time entitled thereto or to any part thereof. If said statement shall be accepted and ratified by acquiescence or otherwise by such person, it shall be a full acquitance and discharge of said executors and trustees for all matters arising under said trust up to and until that time, excepting any willful neglect or willful fraud on the part of said executors and trustees." (Italics ours.)

The trust estate includes both real and personal property. At one time not the same rule applied to both so far as concerns remainders. The distinction was supposed to grow out of the fact that real estate was not charged with payment of the testator's debts. This is no longer true in Colorado. There may be other reasons for the distinction but they are not now of much, if any, force. The modern doctrine is that where a will includes both kinds of prop-

erty in a declaration of trust, and in the same language, the presumption is that both are given with the same intent and governed by the same rule. *Mulvane v. Rude,* 146 Ind. 476, 45 N. E. 659; *Knight v. Pottgieser,* 176 Ill. 368, 52 N. E. 934. It would seem necessarily to follow, that as vested interests are favored in the law, those rules of construction, whether originally applicable to real or personal property, that are most likely to bring about this result should be enforced.

It will be observed that in this clause is a direct and immediate devise and bequest of the residuary estate consisting of both classes of property to trustees, in trust, for the benefit of the testator's daughter Gertrude, and her children and descendants of such children. The parties seem to be in accord that the intention of the testator was that the daughter should have and enjoy the trust property during her life with the remainder over, whether vested or contingent, to her children as a class and to the descendants of the children, such descendants taking *per stirpes* and not *per capita.* By some of the decisions this gift to trustees, so far as concerns the questions before us, is the same as it would be if it had been made, without the intervention of trustees, directly to the daughter Gertrude for life, remainder over to her children and descendants. In the opinions in some of these cases are intimations that, in such circumstances as are present here, the interest thus created is not technically a remainder, but a vested, absolute, equitable estate in the beneficiaries subject only to the legal title of the trustees. *Lunt v. Lunt,* 108 Ill. 307; *Sawyer v. Cubby,* 146 N. Y. 192, 40 N. E. 869. As the parties agree that a remainder was created by the will, our opinion will adopt this view, particularly as our conclusion is that a vested interest or estate was created irrespective of its technical name or classification.

An attempt to reconcile the conflicting decisions in this country and in England on the subject of vested and contingent remainders is as futile as it would be useless. Rarely, if ever, are any two wills alike, either in their gen-

eral scheme or language. Some of the apparent conflicts are thereby easily accounted for by these differences. In *Platt v. Brannan*, 34 Colo. 125 (81 Pac. 755, 114 Am. St. Rep. 147), this Court, page 128, said:

"In construing wills, the cardinal and fundamental rule is to ascertain the intent of the testator, and if the same is not contrary to some positive rule of law or against public policy, to give it effect. This intention is to be derived from the language of the will itself. When this is plain and unambiguous, the intent is easily determined; but when there is uncertainty of language, * * * resort is had to well recognized rules of construction, more or less technical in their nature. * * * Precedents are of some assistance, but too much reliance is not to be placed upon them, for rarely, if ever, are two wills precisely alike in language or in general structure."

The same thought is expressed in *Williams v. Fundingsland*, 74 Colo. 315, 221 Pac. 1084. With this fundamental and controlling principle in mind, let this will be considered.

We venture to say that a skilled lawyer, if he could for the time being lay aside his knowledge of the pertinent canons of construction, or an intelligent layman, unacquainted with them, reading this will, would find therein no uncertainties or ambiguities, but could easily determine the purpose of the testator. The lawyer probably would give to the interest or estate a legal name; the layman might not be able to do so. Each one, we think, would say that as to this trust property the testator intended that all of it, both principal and accretions by way of income or interest, should inure to his daughter Gertrude and her descendants only, and, if they were not living at the time for final distribution, what remained of the trust estate should go to their heirs at law, or personal representatives, and that none of testator's other children, or their descendants or any other persons, should ever have or enjoy the use of the same or any part thereof. The reader would also discover, what is plainly expressed, that during the

life of the trust the trustees, to whom was given complete control and management, might in their discretion, "from time to time", beginning at once after the death of the testator, in the event his daughter Gertrude survived him, pay out not only the interest or income, but pay out of the *corpus* or principal of the trust estate itself, in support of Gertrude and her family, such sums as the trustees deemed necessary.   He would also learn that the trustees might permit Gertrude "to use *such or all of said trust* estate then in their hands as they may deem advisable."   Still further to emphasize the wish and intent of the testator that his daughter and her children should receive at once upon his death, a present immediate estate and not a mere possibility of an estate, the will continues:   "And I suggest to my said executors and trustees that it is my desire that my said daughter Gertrude E. Hart Hignett have the sole use of said Trust Estate during her life-time, however, this suggestion shall not be construed so as to control the actions of said executors and trustees, but they shall exercise and use their best judgment as to such use and possession."

While this desire of testator is made in the form of a suggestion, still it is a clear and emphatic expression of his intention and wish that his daughter, so long as she lives, should have for herself and family the sole use of the trust estate and not merely the income or profit therefrom.   And, although the testator does not wish to interfere with the broad discretion which he has conferred upon the trustees, nevertheless this, as is well known, is a legal discretion, and a mere wish or suggestion of a testator, when thus clearly expressed, is just as mandatory upon the trustees as though it were a positive direction or command, and the same, if necessary, will be enforced by the courts.

The will, moreover, further reads:   "I further will and direct that in case my said daughter Gertrude E. Hart Hignett does not survive me, said executors and trustees may pay out of said Trust Estate or any profits, interest or income therefrom such sums from time to time as they

may determine to be needful or expedient in the education, maintenance or support of any child or children of my said daughter Gertrude E. Hart Hignett or the descendants of such child or children."

So also in the event the daughter Gertrude survives the testator, the will says: "* * * Then upon her death my said executors and trustees may pay out of said Trust Estate or any profits, interest or income therefrom such sums from time to time * * * and such payment or payments shall be considered as an advancement as hereinafter provided."

Then in orderly sequence the testator, for reasons satisfactory to himself, it may be because he considered it for the convenience or good of his estate, directed distribution of the estate when the youngest child of Gertrude, whether born before or after the testator's death, attains the age of twenty years. To sum up, the testator gave to trustees of his trust estate, in trust, for the sole use and benefit of his daughter Gertrude and her family during her life, and at her death to her children and their descendants, and from and after the testator's death and until the youngest child of Gertrude reached the age of twenty years, the trustees were directed to use in their discretion the entire trust estate and its income in the support and in the maintenance of the family, and in the education of the children, and at the time last specified the trustees were directed to distribute what was then left of the trust property to the beneficiaries in the manner and in the proportion designated. To the ordinary mind it would seem that a present and immediate right to the trust estate was thus acquired by the beneficiaries, taking effect at once at the testator's death, the final distribution and enjoyment of which was postponed till the youngest child reached the designated age.

2. A reading of the cases and textbooks discloses that almost every definition of a vested and a contingent remainder, whether by jurists, lawyers or authors, has been criticized. Many attempts at description and definition

have been made, not always with success. Possibly Chancellor Kent's definition is as acceptable as any, and has often been cited with approval. In 4 Kent's Commentaries, (14th Ed.), p. *202, *et seq.*, that learned jurist said: "An estate is vested when there is an immediate right of present enjoyment, or a present fixed right of future enjoyment."

"A contingent remainder is limited so as to depend on an event or condition which is dubious and uncertain, and may never happen or be performed, or not until after the determination of the particular estate. It is not the uncertainty of enjoyment in future, but the uncertainty of the right to that enjoyment, which marks the difference between a vested and contingent interest."

Applying this rule to the facts of this case, it is to be said that at the time of the testator's death his daughter Gertrude and three of her children were living. To Gertrude was given a life estate in the trust property; to the children as a class a remainder over at her death. At the very moment of the testator's death the life estate was vested in her, as was the remainder in the living children. The remaindermen, in being at the same time, immediately upon the termination of the life estate by the death of Gertrude, were ready to take, and, in that event, would have taken. The estate, therefore, under all the definitions, as it seems to us, thus created was vested and not contingent. The fact that the remaindermen might not be living at the time fixed for final distribution does not affect or prevent the vesting of the estate at the time of the testator's death. Only the enjoyment of the property, or a portion thereof, is postponed to a future time. The right to the future enjoyment was fixed and immediate upon the death of the testator. Possession and enjoyment only were deferred. We have arrived at this conclusion from the plain and unambiguous terms of the will itself. Unless there are declarations or expressions in the will itself to the contrary, we do not see any escape from this conclusion.

3. Let us further inquire about this intention, and in this inquiry we shall try to state the contentions of the respondents, which we deem worthy of consideration, which they say make the disposition of the trust property a contingent, instead of a vested, remainder. It is true the will does provide that whether Gertrude does or does not survive the testator, the moneys paid to her children or their descendants for support and education, before final distribution, shall be considered as an advancement to the one or ones to whom made, and in one contingency interest is to be deducted. Respondents say that such a provision indicates that the testator did not intend at his death to vest any interest whatever in the principal of the estate, because it is inconsistent to require that an advancement to a child of that which already belongs to him should be charged against him, or be deducted from his final share when the trust fund is distributed. We do not think so. The clause itself speaks of interest being deducted from the "share" that such beneficiary would otherwise receive. The word "share" implies that the principal of the trust estate, as well as the income, was already vested and had been acquired by the beneficiaries at the testator's death, because the trustees were by another provision directed to pay the beneficiaries out of the principal and the income. The advancement provision has not the effect claimed for it by respondents. In the administration of the trust it might well be that, because of the illness of one of Gertrude's children, or because of the cost of his education, or from ill health, it became necessary for the trustees to advance to such child during the interval between the vesting of the estate and its final distribution a greater sum than to either of the other one of the two children. The scheme of the will plainly and avowedly was that each child should have an equal interest in the trust estate. This could not be accomplished unless the advancements to each are taken into consideration, and the only, and the proper, way to bring about and preserve equality between them

was to charge against each the advancements he received before final distribution.

4.   Another point by respondents is based upon the following paragraph: "I further direct that in case the law of any jurisdiction in which any of said property is situate does not or will not permit said executors or trustees to postpone the date of distribution of said Trust Estate as hereinbefore provided, or if the provisions or directions of the first two paragraphs of page four of this instrument (This refers to the direction as to the time and manner of distributing the trust estate) should for any reason be invalidated or become inoperative as to any or all of said Trust property, then as to any such parcel or parcels, or all of said Trust Estate said executors or trustees shall upon the death of my said daughter Gertrude E. Hart Hignett, if she survives me, and in case she, my daughter Gertrude E. Hart Hignett does not survive me, then upon the death of her youngest child that does survive me, distribute among and the same shall become vested in, the children of said Gertrude E. Hart Hignett and the descendants of such children   *   *   *."

The respondents say that the only purpose thereof was to guard against the danger of a conflict with the rule against perpetuities. That may have been one object but not the only one. The devise and bequest to trustees would, we think, avoid that danger, for the rule is directed against an unlawful suspension of the time of vesting and not time of enjoyment. The testator does not make this direction merely to obviate the danger suggested, for the will says that if for any reason these provisions with reference to the time and manner of distribution should be invalidated or become inoperative, the trustees, nevertheless, shall make disposition, and within the appropriate time and in the same manner, to the same persons designated to receive under the terms of the trust; that is, if for any reason the terms of the trust become inoperative, nevertheless the trust estate shall be distributed and belong to the same persons who are mentioned as beneficiaries therein.

5. The will, in clauses preceding the 6th, makes nominal bequests to each of testator's other four children, three sons and a daughter. We may rightly presume that the testator was fully acquainted with all of his children and with their necessities, the extent of their demands, if any, upon him, what share in his estate each should have, and that he had otherwise and before the will was made, placed all of his children upon an equality by giving to the four who received nominal gifts in the will, property of equal value with that therein given to his daughter Gertrude. But whatever his reasons for disposing of his property as he did in this will, there is no claim that he did not have the unquestioned right and power of disposition, and if the will in this respect is not, and no such claim is made, against public policy or contrary to some recognized rule of law, it must be upheld, even though the four respondent children and their heirs at law believe they had been discriminated against. Dissatisfied heirs or children have not power to make a will for their ancestor and courts are not invested with such authority. The mere fact that the testator made provision in his will for each of his five children and that he gave his entire residuary estate to one of them only and to her descendants, is a strong indication that he thereby intended to exclude the other four and their descendants and heirs from any share therein. Their claims, if any, were not overlooked or forgotten. On the contrary, he remembered each one in his will.

There is nothing in the will which indicates that the testator intended to restrict his gifts to those of his own blood, or that he was hostile to, or cherished antipathy for, the petitioner, the husband of his daughter Gertrude. On the contrary, petitioner was then a member of Gertrude's family and the will expressly says the trust estate is for the benefit of her family. Testator knew when he made the will that Gertrude was married to Mr. Hignett and they had three children living. He is presumed to know the law of his state, and if this trust estate was vested in the legatees living as of the time of his death and thereafter all

of them died without issue, before the time fixed for final distribution, that the same would vest in the petitioner as their sole heir.  Considering the age and condition of Gertrude and her children, this unexpected death may have been so remote as not to have been anticipated, or as not calling for further provision, in that contingency.  Possibly it was not any more improbable than that only one of his other four children would be living and married, and without issue, at the time of final distribution, and that this survivor of the other four would die on the following day, and if the remainder over in Gertrude's children was contingent, the property would go to the surviving spouse of testator's last surviving child, that is, to one not of the testator's own blood.  In the other contingency it is conceded that if the remainder was vested it would go to the surviving spouse of Gertrude, the father of her deceased children, that is, to one not of the testator's own blood.  So that the rule which obtains, in case of doubt, that a construction will be given that restricts a devised estate to those of testator's own blood in preference to a stranger, has no application, or, if any, it might be invoked by each of the parties here with equal confidence, and equal reason, in support of his or their contention.  Had the testator wished the trust estate to go to other persons, in the contingency that happened here, he could easily have created a reversion in favor of his own estate, or a second remainder over to persons of his own selection.

6.  Speaking generally, we say that the various rules invoked by respondents and the propositions asserted by them to sustain their contentions, may be conceded to be sound in the cases where they were announced and under their facts, but in none of them are the provisions of the will construed, the same, or even in material parts, so similar to the Hart will as to be controlling or even very persuasive.  Respondents say that there is in this will no antecedent or separate gift to beneficiaries, and no gift at all other than that implied from the direction to pay or distribute, and from this they reach the conclusion, which ac-

cords with the general rule, that a beneficiary interest does not ordinarily vest until the time for distribution, unless the postponement is for the convenience of the estate and not for reasons personal to the legatee. To this are cited: 40 Cyc. p. 1656; *Matter of Baer,* 147 N. Y. 348, 41 N. E. 702; *In re. Moran's Will,* 118 Wis. 177, 96 N. W. 367; *Smith v. Edwards,* 88 N. Y. 92; *Dohn's Exec. v. Dohn,* 110 Ky. 884, 23 Ky. L. R. 256, 62 S. W. 1033, 64 S. W. 352; *Kountz's Estate,* 213 Pa. 390, 62 Atl. 1103, 3 L. R. A. (N. S.) 639, 5 Ann. Cas. 427; and other similar cases. There are several answers to this position. There is nothing in the will which indicates any reason that is personal to the legatee. Indeed, it is altogether clear that the postponement was for the convenience and benefit of the estate as an estate. Moreover, the rule is stated as a general rule, to which there are exceptions just as well established as the rule itself. The very cases relied upon bring this case within the exception and make the remainder vested. In the Dohn Case the court said the remainder would be vested if the gift had been made to a trustee in trust for the children, with directions to pay certain monthly allowances. There was nothing of that character in the Dohn will. That, however, is exactly what this will has done. There is here a direct, immediate devise and bequest to trustees, in trust, for the beneficiaries, with direction to pay over, pending final distribution, any or all of the trust estate, principal and interest, until the period of distribution has arrived.

Another exception which is applicable here is that where the entire income—and some cases say part of the income —or any part of the principal of the trust property is directed to be paid over in the interval, the general rule fails and the exception governs. In such a case only payment is deferred, and time is not of the essence or substance of the gift. In the Moran Case, perhaps respondents' chief reliance, where the remainder or interest was held to be contingent, the majority opinion clearly differentiates that case from this. There was not in that case, as there is

here, a direct devise and bequest to remaindermen, through the medium of trustees, but a gift only by implication from a direction to pay over or distribute. There the language was explicit that distribution should be made only to those "who may survive" the event on which division was made dependent. Even in that case the dissenting opinion by Chief Justice Cassoday, citing from former Wisconsin and New York cases, said the remainder was vested. But the remainder here, even by the test laid down in the majority opinion in the Moran Case, sustains our conclusion that in this Hart will the remainder vested at the time of the death of the testator. The Kountz Case is much like the Moran Case in its facts. There was no direct gift of the principal of the trust estate, only a possible interest in the income. The court in that case, however, said, at page 398 of the opinion: "It will be noticed that we do not have here the case of income and principal to be paid to the same person in the same right. The testator has not given the principal to be paid at a future time, with income or maintenance in the meantime. On the contrary, there are distinct gifts of the income to the children and of the principal to the grandchildren."

Here we do have the kind of a case which the Kountz opinion says was not before the Pennsylvania court. Here we have a case of income and principal to be paid to the same persons and in the same right. The language of the Kountz Case shows conclusively that had such facts been present in that case as are present here, the remainder would have been held vested. There are other expressions in the opinion of the Kountz Case which further distinguish it from the facts of the instant case.

7. Respondents also say that in a gift to a class of persons the share of each is dependent upon the ultimate number whose members are to be determined at the time of distribution, citing 40 Cyc. p. 1473. On page 1475 the author says the general rule is that where an immediate gift is to a class of persons it vests in those of the class *in esse* at the time of the testator's death, although distribution

is postponed to a later period, unless a different intention appears from the context of the will. We have already held that there was an immediate gift here. There is nothing in the context of the will to show a different intention. The fact that provision here has been made for grandchildren born after the testator's death does not change the general rule announced, because such grandchild would take by substitution. This remainder might open to let in such after-born children, the only effect of which would be to diminish the interest of those living at the death of the life tenant.

8. The respondents further contend that the clause in the will: "whenever the youngest child of my said daughter Gertrude * * * shall attain the age of Twenty (20) Years, then my said executors and trustees shall distribute said Trust Estate and the same shall become vested as follows:", is conclusive that only a possibility of an interest was given and not a vested estate, since it was necessarily uncertain who the remaindermen would be when the youngest child became twenty years of age. The argument is that "then" applies not only to the time of distribution but to the time of vesting of the estate. It is not difficult to demonstrate that "then" is restricted to the time of distribution and not to the time of vesting, even from this clause alone, disconnected from everything else that appears in the instrument. "Then" is not repeated after the distribution is directed, but the will reads: "the same shall become vested as follows:". What follows has no bearing whatever on the time of vesting. It relates solely and wholly to the manner, not to the time, of distribution, and to the *quantum* of interest in the respective beneficiaries in the contingencies mentioned.

Besides, ordinarily to vest means "take effect". Vesting, however, is used to denote not merely an immediate right of present enjoyment but also the present fixed right of future enjoyment. In other words, there is a vesting in interest and a vesting in possession. *Smith v. West,* 103 Ill. 332, 337. As the entire will shows that the intention

was to vest a remainder to take effect at the testator's death, the right thus created was at that time a present fixed right of future enjoyment or distribution, postponed until the time of final distribution of the residue of the *corpus* of the trust estate. This present fixed right had already become vested at the death of the testator. "Vested" as used in this connection with the direction for possession, evidently means practically the same as "possession", or "payment", that is to say, the previously created fixed right of future enjoyment of the trust estate having been acquired by the beneficiaries at the death of the testator, and the future right of actual possession, having been postponed to the time of distribution, such future right of possession becomes fixed at the time for distribution. 40 Cyc. p. 198.

9. *Chilcott v. Hart*, 23 Colo. 40, 45 Pac. 391, 35 L. R. A. 41, is not an authority for respondents. The remainders were considered there in connection with the rule against perpetuities and that rule is not even remotely involved here. But the remainder there adjudged contingent was so palpably different from the one in this case that the decision there has no application whatever to the case now before us. There a particular freehold estate was granted to a trustee with remainder over to such of the testator's grandchildren as were living at the time of the death of the last of his three children. We said that remainder was contingent because, in the nature of things, the persons in whom the fee would ultimately vest were dubious and unascertainable so long as any one of the three children was living. There is no such language in this will and no such manifestation of intention by the testator that a contingent interest was in his mind. Here there were living at the time of the testator's death not only the life tenant of the particular estate but also three remaindermen were, *in esse*, capable of taking the moment the particular estate should terminate, to open, of course, if necessary to let in other children born either before or after testator's death, as he had thus provided.

10. We come now to the last paragraph above quoted which we think conclusive that a vested estate was in-

tended. It directs the trustees to prepare a yearly statement of the condition of the trust estate, when requested by the person or persons at the time entitled thereto, or any part thereof, and, except for willful neglect or fraud, such prepared statement, if accepted or acquiesced in by the designated person who receives it, is to be deemed a recognition by him of the proper performance up to that time by the trustee of his duties under the trust. Necessarily this direction is a distinct recognition of a fixed present right in the beneficiaries from the moment of the testator's death to a vested interest in the trust estate itself. Otherwise the direction is meaningless. Only those who have a property interest or share in the trust estate, and Gertrude and her direct descendants are the only ones, are entitled to have the trustees make a statement of the condition of the trust. The testator certainly knew what he was doing. He must have known that if he was creating for these beneficiaries a mere contingent remainder, which is not an interest or an estate, but "merely the possibility or prospect of an estate" (1 Tiffany on Real Property, 2d Ed., Sec. 136), he was giving a direction to the trustees to do something at the request of some one who, at the time, had no vested interest in the trust estate, but only a possible future interest that might never ripen. We can not hold the testator guilty of what would be a senseless and absurd thing, if he intended to, or did, create a contingent remainder.

We think petitioner's theory is right and the rules of construction invoked, if there are uncertainties in the will, make this remainder vested. These rules of construction, and they are as potent and important as any announced, are that, unless the expressed intention of the testator clearly appears in the will to the contrary, an absolute, rather than a qualified, a vested, rather than a contingent, interest or estate is created; that intestacy is not favored and a testator is presumed, when he makes a will, to dispose of all of his property. In addition to the cases above mentioned, the following, among others, have been cited and

relied upon by the petitioner: *Greenwood v. Greenwood,* 63 Colo. 445, 167 Pac. 1179; 40 Cyc. pp. 1607, 1650, 1927; *Sterling v. Ives,* 78 Conn. 498, 62 Atl. 948; *Lewis v. Howe,* 174 N. Y. 340, 66 N. E. 975, 1101; *Roberts Appeal,* 59 Pa. 70, 98 Am. Dec. 312; *Carstensen's Estate,* 196 Pa. 325, 46 Atl. 495; *In re Tims' Estate,* 63 Misc. Rep. 148, 118 N. Y. Supp. 507; *Campbell v. Bradford,* 166 Ind. 451, 77 N. E. 849; *McArthur v. Scott,* 113 U. S. 340, 5 Sup. Ct. 652, 28 L. Ed. 1015; *Hawkins v. Bohling,* 168 Ill. 214, 48 N. E. 94; *Minot v. Purrington,* 190 Mass. 336, 77 N. E. 630; *Heberton v. McClain* (C. C.) 135 Fed. 226; *Phillips' Estate,* 205 Pa. 504, 55 Atl. 210, 97 Am. St. Rep. 743; *Safe Deposit & Trust Co. v. Wood,* 201 Pa. 420, 50 Atl. 920; *Dusenberry v. Johnson,* 59 N. J. Eq. 336, 45 Atl. 103; *Marshall v. Safe Deposit & Trust Co.,* 101 Md. 1, 60 Atl. 476; *Middleton's Estate,* 212 Pa. 119, 61 Atl. 808; *Wicker v. Wicker,* 70 S. C. 33, 49 S. E. 10; *Post v. Herbert's Executors,* 27 N. J. Eq. 540; 1 Perry on Trusts, p. 188, § 160; *Chater v. Carter,* 238 U. S. 572, 35 Sup. Ct. 859, 59 L. Ed. 1462; 39 Cyc. p. 109; *Bunting v. Speek,* 41 Kan. 424, 21 Pac. 288, 3 L. R. 690; *Hersee v. Simpson,* 154 N. Y. 496, 48 N. E. 890; *Nelson v. Russell,* 135 N. Y. 137, 31 N. E. 1008; *Moore v. Lyons,* 25 Wend. *119; *Scott v. West,* 63 Wis. 529, 24 N. W. 161, 25 N. W. 18.

And the following by respondents: 1 Tiffany on Real Property, p. 486, § 136-b; Washburn on Real Property, vol. 2, p. 515, § 1543; *Howbert v. Cauthorn,* 100 Va. 649, 42 S. E. 683; *Schuldt's Estate,* 199 Pa. 58, 48 Atl. 879; *Sellers v. Reed,* 88 Va. 377, 13 S. E. 754; *Hanson v. Graham,* 6 Ves. Jr. p. 239; *Neeb's Estate,* 263 Pa. 197, 106 Atl. 317; *McCartney v. Osburn,* 118 Ill. 403, 9 N. E. 210; *Kingman v. Harmon,* 131 Ill. 171, 23 N. E. 430; *Jones v. Miller,* 283 Ill. 348, 119 N. E. 324; *Matter of Crane,* 164 N. Y. 71, 58 N. E. 47; *In re Bell's Will,* 147 Minn. 62, 179 N. W. 650; *Clark v. Cammann,* 160 N. Y. 315, 58 N. E. 709; *Twaites v. Waller,* 133 Iowa, 84, 110 N. W. 279; *Ross v. Ware,* 131 Ky. 828, 116 S. W. 241; *White v. Underwood,* 215 Mass. 299, 102 N. E. 426; *Rudd v. Cornell,* 171 N. Y. 114, 63 N.

E. 823; *Storrs v. Burgess,* 101 Me. 26, 62 Atl. 730; *Brewick v. Anderson,* 267 Ill. 169, 107 N. E. 878; *Baker et al. v. Hibbs,* 167 Iowa, 174, 149 N. W. 85; *Fulton v. Fulton,* 179 Iowa, 948, 162 N. W. 253, L. R. A. 1918E, 1080; *Dean et al. v. Crews,* 77 Fla. 319, 81 South. 479; *Bond v. Moore,* 236 Ill. 576, 86 N. E. 386, 19 L. R. A. (N. S.) 540.

As we have found the remainder to be vested, not contingent, it necessarily follows, as both parties concede, that distribution in that event should be to the petitioner. The trial court having ordered distribution to the respondents, its decree is reversed, and the cause remanded, with directions to set it aside, and, in lieu thereof, to make a decree directing distribution to the petitioner.