No. 14,015.

ESTATE OF BACON.
BACON ET AL. *v.* KITELEY, EXECUTOR ET AL.
(75 P. [2d] 590)

Decided June 21, 1937. On rehearing original opinion adhered to
January 17, 1938.

Mr. ARCHIBALD A. LEE, Mr. BENJAMIN GRIFFITH, for
for plaintiffs in error.

Mr. FRAZER ARNOLD, Mr. ARNOLD WEINBERGER, Mr.
FRED W. MATTSON, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE BURKE delivered the opinion of the
court.

THESE parties appear here in the same order as in the trial court and are hereinafter referred to as plaintiffs and defendants respectively, or by name.

Plaintiffs brought this action to construe the will of Eliza A. Bacon, contending that a bequest therein to Lauren F. Bacon should be paid to them. Defendants, beneficiaries under that will, maintained that said bequest had lapsed because of the death of said Lauren F. Bacon. The county court held with defendants, and to review the judgment entered accordingly plaintiffs prosecute this writ. The facts are undisputed.

Plaintiffs are the widow and son respectively of Lauren, who was the son of James W. Bacon (husband of Eliza), whose will was probated in Denver in 1916. Lauren and his brother Archie were sons of James by a former wife. The will of James provided, inter alia: "In making this my last will I have not mentioned my beloved wife Eliza A. Bassett Bacon for the reason that there exists a prenuptial agreement between us whereby she surrenders all her right of dower in or to my estate, and she is possessed of ample means for her subsistence."

On the probate of that will Eliza, the widow, appears to have been disposed to contest it. To obviate this Lauren and Archie paid her $11,360. Of this sum $1,360 seems to have rested upon some other consideration and is hereinafter disregarded. Presumably each paid her, for said purpose, $5000. Eliza executed her will in 1919 at the age of 73. The questioned clause thereof reads: "After all my just debts are paid and discharged, I give, devise and bequeath to my two step-sons Lauren F. and Archie D. Bacon now of Longmont, Colorado, five thousand dollars each either in cash or its equivalent as my executor may elect, to repay them for the money they paid me for relinquishing all claims to my share in their father's estate, as I have no desire to retain one dollar of his money, either for myself or my relatives and will only use same till my decease."

About one year later Lauren died intestate, leaving as his sole heirs these plaintiffs. Eliza died late in 1934 at the age of 89 and her will was admitted to probate February 11, 1935. The question here is, Did her bequest of $5,000 to Lauren lapse with the latter's death?

■■ The first rule in the interpretation of wills is that the intent of the testator governs. That intent must, if possible, be ascertained from the will itself and effectuated by.the courts. If doubt exists resort may be had to certain recognized principles and rules of construction. 69 C. J., p. 52, §1118. A general rule is that a legacy lapses by the death of the legatee, in testator's lifetime, if no successor be named. The reason therefor is that testator is presumably making a gift to the individual only and if that individual dies before the gift vests, and no successor is named, we assume that testator's intention to give expired with the object of his bounty and the bequest returns to, or rather never leaves, the estate. 69 C. J., p. 1051, §2256. In case of a bequest to discharge a debt the rule changes because the reason changes. Here the thing in testator's mind is the debt, not the person, and since had the debt been paid in legatee's lifetime it would have passed to his estate and gone to his heirs, and testator's intent been thus effectuated, the law so holds and the legacy does not lapse. 69 C. J., p. 1055, §2262. But since this rule rests upon testator's intent, and is merely a means of ascertaining it, courts properly extend it, on the same reasoning, to the equivalent of a legal debt, i. e., one barred by statute or existing only in the mind of the testator, or a moral obligation which the will discloses that testator considered as binding as if good in law. Id. Also *Stevens v. King,* 2 Ch. Div. Law Rep. (1904) 30. The best possible answer to the applicability of the last mentioned rule, and the authorities cited in support of it, is to be found in the case of *In Re Sutro's Estate,* 139 Cal. 87, 72 Pac. 827. But aside from the fact that this decision rests upon an express statute a vital distinction is ap-

parent. In the Sutro case the bequest was made to a woman for the purpose, in the language of the will, of compensating her "as far as it may be possible, for the injury done her by a scandalous charge." Clearly that bequest was intended for the legatee alone. It was a "reparation" for a personal injury. Testator had taken nothing from legatee's estate to the injury of her heirs. Here the contrary appears.

Guided by these general rules, and the reasoning upon which they rest, what do we learn from this record as to testator's intent? She and her husband had entered into a prenuptial contract which he believed justified his failure to give her anything by will. Upon reading that will she, for some reason, disagreed. His sons, anxious to evade litigation, settled with her by payments of $5,000 each. These came out of their father's estate. She believed she was entitled to the use of the money during her lifetime, nothing more. She repudiated any additional interest and expressly repudiated any right or desire to pass this money to her other legatees. She recognized it as a part of her deceased husband's estate which should ultimately be disposed of as directed by his will. She considered it a mere loan without interest which honor demanded should be returned. In no other way can we account for the definite language of her will —"to *repay* them"—"I have no desire to retain one dollar of *his* [her deceased husband's] money, either for myself *or my relatives* [her legatees] and will only *use* same *till my decease*." These provisions she left unaltered for some fifteen years after they were written and for approximately fourteen years after the death of Lauren. It is not conceivable that during all that time she believed this $5,000 would, at her death, go to the very persons she had thus foreclosed, as the result of a supposed legal right which she had repudiated. It seems to us that the judgment herein thus violates the fixed and clearly expressed intent of this testator.

That judgment is accordingly reversed and the cause remanded for further proceedings in harmony herewith.

Mr. Justice Hilliard and Mr. Justice Bakke concur.

Rehearing granted November 8th, A. D. 1937.
On Rehearing original opinion adhered to January 17th, 1938.

Mr. Justice Bouck and Mr. Justice Bakke dissent.