No. 15,263.

Estate of Paulsen.

Pitman et al. *v.* Colorado National Bank et al.
(158 P. [2d] 186)

Decided March 19, 1945. Rehearing denied April 30, 1945.

Mr. Darwin D. Coit, Mr. Karl E. Swanburg, for plaintiffs in error.

Mr. Fred W. Mattson, Mr. A. B. Mattson, for defendants in error.

*In Department.*

Mr. Justice Alter delivered the opinion of the court.

In this proceeding the Colorado National Bank of Denver as executor of the estate of August H. Paulsen, deceased, filed its petition for a construction of the last will and testament of decedent.

The last will and testament reads as follows:

"A. H. Paulsen 1375 Lincoln St. Apartment 33

Denver, Colorado
September 24th. 1940

"To whom it may concern,

"Greeting:—

"I the undersigned, August H. Paulsen, now residing at 1375 Lincoln Street, Apartment 33, Paramount, apts in the city and county of Denver, and State of Colorado, being in good bodily health, and of sound and

disposing mind and memory, but realizing the uncertainity of this mortal life, do make, publish and declare, this instrument of writing, my last will and testament, that is to say

"I will devise, and bequeath, unto my Brother Robert E Paulsen; 415 East Adams Boulevard, Los Angeles, Calif. Brother Richard J Paulsen Sr; 3778 Drakewood Drive, Cincinnati, Ohio. Nephew, Richard J Paulsen Jr; 2991 Observatory Ave, Cincinnati, Ohio. Neice, Mrs. Dora Lippold, 2901 Urwiler Avenue, Cincinnati, Ohio.

"After payment of all legal and funeral expences, I bequeath unto my loyal housekeeper Mrs. Wilma Chavez, Five Thousand Dollars; To my good friend Harry Kumpf, barber in the Symes Bldg. Denver, Colo. the sum of ($1000) One Thousand Dollars. To Euclid Lodge No; 64 A.F. & A.M. of La Junta Colorado the sum of One Thousand Dollars. After payment of these latter three, the balance of the finances derived from the sale of stock certificates which are contained in my safety deposit box, of the Colorado National Bank Vault, shall be prorated among my relatives, named above. Should any one of my relatives, or any one contest this will, they shall be eliminated forthwith; should any be deceased, their legal heirs will not particapate, as that proportion shall be devided among those living. I shall endeavor while alive to pay some of the latter three, and if I do I will attach receipts hereto.

"A H Paulsen 1375 Lincoln St. Denver, Colo.

"Sheet number two.

"My personal property, household furniture etc; is to be devided among my wife's neices; with the exception of the telephone desk and chair which I have promised to Mrs. E V Rees of 954 South Gaylord Street Denver Colorado.

"The addresses of my deceased wife's neices are as follows: Mrs. Cleo Pitman, 827 East Fourth Ave. Pu-

eblo, Colorado; Mrs. Mamie Clark, 930 Tascosa Street, Trinidad Colorado; Mrs. Ruth Clark, Weston Colorado, R F D Route One Box 18 And Mrs Helen Prentiss, Los Angeles California; who is sister to Mrs. Cleo Pitman; not forgetting my loyal housekeeper Mrs Wilma Chavez

"I appoint the Colorado National Bank as my Executor; under the regulation as to bond etc.

"Witness                    August H Paulsen
"Mrs. E. V. Rees, Elmer V. Rees"

In the petition the Colorado National Bank clearly set forth its construction in the following language: "4. That your petitioner is advised by its counsel and believes that a reasonable interpretation of decedent's Will is as follows: The decedent first classified his property into two categories: (1) personal effects such as furniture and jewelry; (2) investments. The first classification he bequeathed to Mrs. Reese and his wife's nieces by the provision on the second page of his will. From the sale of his investments, which he thought of in terms of the stock certificates in his safe deposit box, he provided that three specific legacies of $5000.00, $1,000.00 and $1000.00 respectively should be paid, the residue then to be divided equally between his two brothers and his nephew and niece named first in his will."

The brothers, nephew and niece of decedent filed their reply, concurring in the construction of the Colorado National Bank as hereinbefore set forth in paragraph 4. The nieces of decedent's deceased wife filed an answer to the executor's petition in which they alleged that under the provisions of the will title to all personal property of decedent was in them, excepting only "the finances derived from the sale of stock certificates which are contained in my safety deposit box, of the Colorado National Bank Vault."

The property in question between the claimants under the last will and testament of August H. Paulsen

appears inventoried by the Colorado National Bank as follows:

"Otero Savings and Loan Association of
    La Junta, Colorado, Savings Account    $8,468.10
Midland Savings and Loan Association of
    Denver, Investment Shares Account    500.00
Colorado National Bank, Savings Account    5.00
First National Bank, Denver, Savings
    Account    1.61
Cash found in apartment    1.48

        Total    $8,976.19"

The county court entered its judgment in accordance with the construction of the Colorado National Bank as hereinbefore set forth in paragraph 4.

Upon appeal to the district court, the evidence disclosed that decedent, who died on April 18, 1941, drew his own will, and his estate consisted entirely of personal property of the value of approximately $40,000.00, of which approximately $9,000.00 only is involved here. The inventoried value of the household furniture, jewelry and other personal effects found in decedent's apartment was $235.00. There were also some worthless stocks found in the apartment.

The evidence further disclosed that the Otero Savings and Loan Association item was evidenced by the small passbook in decedent's possession at his apartment rather than in his safety deposit box and was designated on the passbook "Share Account Book." On the inside of the passbook was the following notation: "No. of Shares 120 Type Savings Acc't No. L-82 Luna B. Paulsen and A. H. Paulsen as joint tenants with right of survivorship and not as tenants in common In account With Otero Savings and Loan Association La Junta, Colorado." One of the inner pages of the "Share Account Book" contains a reference to "Savings Share Certificate" and on another the "Share Ac-

count Book" is referred to as a certificate. Other than the "Share Account Book" there is no stock certificate as that term is commonly used and understood.

The assistant trust officer of the Colorado National Bank produced a certificate in the Midland Savings and Loan Company, indicating that decedent had been "the owner of Five (-5-) Shares of the Par Value of One Hundred Dollars per Share of the Fully Paid Investment Capital Stock of the Midland Savings and Loan Company." The testimony disclosed that the Midland Savings and Loan Company subsequently federalized and was known as the Midland Federal Savings and Loan Association. The certificate in the Midland Savings and Loan Company was cancelled, and there was issued in lieu thereof a passbook which was found in decedent's appartment and not in his safety deposit box. This passbook had noted on it "Investment Account No. 45341 Name of Member August H. Paulsen" together with other language pertaining to an "Investment Account." The transaction between the Midland Savings and Loan Company and the Midland Federal Savings and. Loan Association was inventoried under the name of Midland Savings and Loan Association, and by that name we shall herein refer to it.

The president of the Midland Savings and Loan Association testified that nine out of ten of their depositors or members treated their business transactions with the company as a savings account in spite of everything that the company could do to dissuade them. There was no evidence whatever indicating that decedent had ever placed the Otero Savings and Loan Association "Share Account Book" or the Midland Savings and Loan Association "Investment Account Book" in his safety deposit box.

The district court, as did the county court, entered its judgment in favor of the construction of the Colorado National Bank in paragraph 4 of its petition, hereinbefore set forth, finding: "The court further finds

that although these items [hereinbefore set forth in the inventory] were not found within the safety deposit box of the testator, that nevertheless the words 'in my safety deposit box,' in this particular case are words of description rather than of limitation." To review the judgment of the district court, the nieces of decedent's deceased wife prosecute this writ of error.

The specification of points upon which the decedent's deceased wife's nieces rely for a reversal may be summarized: The court erred in construing the will herein and in holding that the Otero Savings and Loan Association "Share Account Book" and the Midland Savings and Loan Association "Investment Account" found in decedent's apartment were stock certificates, and passed to the brothers, niece and nephew under the provisions of the will.

There are certain well-recognized and general principles to be followed in construing wills, all of which may be summarized as the ascertainment of the testator's intention as expressed in the will when it is considered in the light of surrounding circumstances and in view of admissible evidence.

"In construing wills, the cardinal and fundamental rule is to ascertain the intent of the testator, and if the same is not contrary to some positive rule of law or against public policy, to give it effect. *This intention is to be derived from the language of the will itself.* When this is plain and unambiguous, the intent is easily determined; but when there is uncertainty of language, whether arising from misuse of technical terms or general inaccuracy of expression, there is more or less difficulty, to overcome which resort is had to well recognized rules of construction, more or less technical in their nature. Words not technical are interpreted in their ordinary and popular signification, but not always so, and when occurring more than once, are presumed to be used in the same sense unless the context shows a contrary intention. *Precedents are of some as-*

*sistance, but too much reliance is not to be placed upon them, for rarely, if ever, are two wills precisely alike in language or in general structure."* (Italics ours) *Platt v. Brannan,* 34 Colo. 125, 81 Pac. 755.

"In the construction of all wills the intention of the testator is the governing principle, the point to which all explanation should be directed. The circumstances of each individual case vary so much from those of most other cases that it is difficult to determine from the explanation or construction of one will what would control in the construction of another; and although there may be general principles tending to assist the courts in determining the intention of the testator, yet they can be but advisory and not controlling. Such rules are to be used as helps toward reaching the intention of the testator 'making them our servants rather than our masters'." *Bacon v. Nichols,* 47 Colo. 31, 105 Pac. 1082. To the same same effect: *Hignett v. Sherman,* 75 Colo. 64, 224 Pac. 411; *Hickey v. Costello,* 80 Colo. 461, 251 Pac. 595; *Roe v. Kavanagh,* 81 Colo. 152, 254 Pac. 161; *Carmichael v. Cole,* 83 Colo. 575, 267 Pac. 408; *Ireland v. Hudson, Executor,* 96 Colo. 240, 41 P. (2d) 237; *Jones v. Pueblo S. & T. Co.,* 103 Colo. 455, 78 P. (2d) 2; *Hale v. Wheeler, Trustee,* 108 Colo. 119, 114 P. (2d) 566; *McLaughlin v. Collins, Executor,* 109 Colo. 377, 125 P. (2d) 633.

"In the law of wills, it is generally said that construction is the ascertaining of the testator's intention as expressed in his will when read in the light of the surrounding circumstances and in view of the admissible evidence; including the application of his intention as thus manifested to the facts and circumstances with which the will deals. While this statement is the one which is in general use and has been in general use for a long time, it has, from a practical standpoint, had a number of different meanings; although the difference has been minimized or entirely hidden by speak-

ing of testator's intention." 2 Page on Wills (Lifetime ed.), p. 787, §914.

"The cardinal rule of testamentary construction, * * * is that the plain intent of the testator as evinced by the language of his will must prevail, if that intent may be carried into effect without violating some deeper principle of public policy or of statute prohibition.

\* \* \*

"Testator's intention if ascertainable must prevail, although the intention is imperfectly expressed, but this does not permit of speculation as to what he meant to say." 2 Schouler on Wills, etc. (6th ed.), pp. 967, 971, §§855, 856.

"* * * The cardinal rule in the construction of wills and codicils is that the intention of the testator must be ascertained if possible, and, if it is not in contravention of some established rule of law or public policy, must be given effect, * * *" 69 C.J., p. 52, §1118.

"The intention which controls in the construction of a will is that which is manifest, either expressly or by necessary implication, from the language of the will, or, as is sometimes said, the testator's intention must be ascertained from the four corners of the will. * * *" 69 C.J., pp. 59, 62, §1119.

"It is the intention of the testator as expressed in his own will which governs; and this paramount intention must be discerned through the words of the will itself, as applied to the subject-matter and the surrounding circumstances." 2 Schouler on Wills, etc. (6th ed.), p. 975, §859.

"The sole purpose of the court in construing a will is to ascertain the intention of the testator *as the same appears from a full and complete consideration of the entire will,* when read in the light of the surrounding circumstances." (Italics ours) 2 Page on Wills (Lifetime ed.), p. 804, §918; *Bacon v. Kiteley, Executor,* 101 Colo. 559, 75 P. (2d)590.

■ The decisions of this court, as well as noted authorities on the question under consideration, compel the conclusion that when the testator, in drafting his will, used the language, "the balance of the finances derived from the sale of stock certificates which are contained in my safety deposit box, of the Colorado National Bank Vault," he intended precisely that. In the absence of any evidence whatever that the "Investment Account" of the Midland Savings and Loan Association and the "Share Account" of the Otero Savings and Loan Association, either prior to, at the time of, or subsequent to the drafting of the will, were ever in the safety deposit box mentioned, it is wholly immaterial whether these items were or were not stock certificates. It is our conclusion that the Otero Savings and Loan Association and the Midland Savings and Loan Association items, by whatever name they were properly designated and whether they were stock certificates or otherwise, did not pass under the provisions of the will to the brothers, nephew and niece mentioned in the first paragraph thereof.

Having determined that the Otero Savings and Loan Association and Midland Savings and Loan Association items did not pass to the brothers, nephew and niece under the terms of the will, we are now confronted with the question as to whether these assets passed to the testator's deceased wife's nieces under the language used by the testator in the bequest of his "personal property, household furniture, etc;"

■ When a will is executed, it is presumed that the testator, by so doing, intended to die testate and that he intended by his will to dispose of his entire estate. Partial intestacy is not to be presumed unless the intention so to do is clearly expressed or results from necessary implication. *Hignett v. Sherman,* 75 Colo. 64, 224 Pac. 411; *Roe v. Kavanagh,* 81 Colo. 152, 254 Pac. 161; *Carmichael v. Cole,* 83 Colo. 575, 267 Pac. 408; *Gibson v. Hills,* 84 Colo. 596, 272 Pac. 660; *Ireland v. Hudson, Ex-*

*ecutor,* 96 Colo. 240, 41 P. (2d) 237; *Bacon v. Kiteley, Executor,* 101 Colo. 559, 75 P. (2d) 590; *Jones v. Pueblo S. & T. Co.,* 103 Colo. 455, 87 P. (2d) 2; *Hale v. Wheeler, Trustee,* 108 Colo. 119, 114 P. (2d) 566; *McLaughlin v. Collins, Executor,* 109 Colo. 377, 125 P. (2d) 633.

"Under ordinary circumstances a man makes a will to dispose of his entire estate, or, at least, of his estate as it exists at the time he makes his will. If, therefore, a will is susceptible of two constructions, by one of which testator disposes of the whole of his estate, and by the other of which he disposes of a part of his estate only, and dies intestate as to the remainder, the courts will prefer the construction by which the whole of testator's estate is disposed of, if this construction is reasonable and consistent with the general scope and provisions of the will. A construction which results in partial intestacy will not be used unless such intention appears clearly. It is said that the courts will prefer any reasonable construction, or any construction which does not do violence to testator's language, to a construction which results in partial intestacy." 2 Page on Wills (Lifetime ed.), p. 845, §926.

"Where there are general words showing that testator intended to dispose of his entire personal property words of quantity or value will not control and expressions describing property in general terms may pass all of it although too restricted in terms to do so and words in general terms will be construed to carry the whole residue. * * *" 2 Schouler on Wills, etc. (6th ed.), p. 1023, §890.

"No presumption of an intention to die intestate as to any part of his property is allowable when the words of a testator's will may fairly carry the whole; for no one is supposed to make his will without meaning to dispose of all his estate and the mere fact of the making of a will furnishes in itself a strong presumption that the testator did not intend to die intestate and the testator is presumed in the absence of indications to the

contrary to intend to dispose of his entire estate and the will should be construed to this result if possible. Where reasonably possible a construction of a will should be favored which will avoid intestacy either total or partial and render the will operative and give effect to all the words and the context should for that purpose control technical words. Intestacy in effect is disfavored as a presumed intention." 2 Schouler on Wills, etc. (6th ed.), p. 1017, §887.

■ ■ It is conceded by the parties hereto that the terms of the will are sufficient to convey some interest in the estate to the nieces of testator's deceased wife. The only disagreement between the parties is what property passes under the term "My personal property, household furniture, etc." We have determined that the Otero Savings and Loan Association and the Midland Savings and Loan Association items do not pass to the brothers, nephew and niece of decedent under the first paragraph of the will, and unless these items should be determined to be "personal property" as that term is used in the will, it will result in an intestacy.

It should be remembered that the will was the handiwork of one uneducated with such matters, and, consequently, his intention cannot be determined by a technical definition of the terms used. We are now charged with the duty of determining just what this testator meant by the use of "My personal property."

"A bequest of 'personal property' includes every form of personal property from whatever source it may be derived; that is, everything except real property. It includes credits, savings-bank deposits, notes, bonds, the proceeds arising from the sale of realty, and the right to a certificate in foreclosure, the time of redemption not having passed. Other provisions of the will may limit the meaning of 'personal property.' The context may show that the term is limited to tangible personal property, and that it is used as an equivalent to one

meaning of 'goods and chattels.' A gift of personal property in general terms together with an enumeration of certain classes of personal property is generally held to be limited to articles of the classes which are enumerated specifically." 3 Page on Wills (Lifetime ed.), p. 44, §964.

"The term 'personal property' is the most comprehensive term which can be used and includes tangible assets, securities and money * * *" 2 Schouler on Wills, etc. (6th ed.), p. 1283, §1125.

■ The phraseology now under consideration is sufficient to bequeath the Otero Savings and Loan Association and the Midland Savings and Loan Association items to testator's deceased wife's nieces, giving the words "personal property" their ordinary and accepted meaning, and unless they are qualified by the words "household furniture" they are broad enough to convey all of the remainder of decedent's estate. If, considering the intention of the testator and the presumption against intestacy, the rule of ejusdem generis applies, it will give the words "personal property" a restricted meaning, and, under the restricted meaning, create an intestacy.

"A gift by words of general description is not to be limited by a subsequent attempt at a particular description. But this presumption is overcome by an expression of intent to the contrary, as gathered from the whole instrument.

"The predominant idea of the testator's mind, if apparent, is heeded, as against all doubtful and conflicting provisions which might of themselves defeat it. All subordinate provisions bend in construction to the testator's main purpose and should, if possible, help carry it out, not obstruct.

"Courts will even change or mould the language of a will in construction, so as to carry out what it appears from reading the whole will that the testator actually

intended." Schouler on Wills and Administration, p. 233, §§475, 476, 477.

"A similar rule is that, where the whole will indicates nothing to the contrary, a gift by words of general description is not to be limited by a subsequent attempt at a particular description. But this presumption is overcome by an expression of intent to the contrary, as gathered from the whole instrument, and specific language generally controls that of a general nature." 2 Schouler on Wills, etc. (6th ed.), p. 1039, §901.

Counsel have cited many decisions from other jurisdictions in which constructions of wills involved stock certificates, the contents of safety deposit boxes, and the property which passed under the term "personal property," and some decisions where the rule of ejusdem generis was applied. We do not deem it necessary in the construction of this will to consider decisions outside our own jurisdiction. We are persuaded by the decisions of our own court to determine the intention of the testator from the language of the will itself and are cautioned against too much reliance upon precedents. The district court reached a conclusion diametrically opposite to that which we have reached, and we have given its judgment the consideration to which it is entitled, notwithstanding which we believe our construction of this will is in accordance with the intent of the testator.

It is our conclusion that: 1. Testator intended to dispose of all of his property by will. 2. Testator intended that the Otero Savings and Loan Association and Midland Savings and Loan Association items should not be included as "stock certificates which are contained in my safety deposit box, of the Colorado National Bank Vault." 3. Testator's intent can be carried into force and effect by classifying the Otero Savings and Loan Association and Midland Savings and Loan Association items as personal property. 4. The application of the rule of ejusdem generis would result in a disposition of assets

not so intended by the testator and would bring about an intestacy. Therefore, it is not favored here.

The judgment of the district court is accordingly reversed and the cause remanded with instructions to enter judgment in harmony herewith.

MR. CHIEF JUSTICE BAKKE and MR. JUSTICE STONE concur.