## No. 16,283.

JOHNSON *v.* SHRIVER, EXECUTRIX ET AL.

(216 P. [2d] 653)

Decided March 20, 1950.

Messrs. MILLER, ALLEN & STRAIN, for plaintiff in error.

Mr. LAWRENCE THULEMEYER, Mr. JOHN R. STEWART, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the court.

PLAINTIFF in error, to whom we hereinafter refer as claimant, filed a claim against the estate of Ada Conroe, deceased, the settlement of which was pending in the county court of Otero county. She then filed a petition in said estate proceeding, in which she alleged that, as a judgment creditor of said Ada Conroe, deceased, she had an interest in the real estate described in the trust agreement to which we hereinafter refer. The prayer of the petition was for judgment declaring the said real

estate to be assets of the estate and liable for the payment of her judgment, which formed the basis of the claim filed against the said estate, which claim was allowed by the probate court.

The defendants in error, hereinafter designated as respondents, were noticed into the county court to show cause why the petition of the claimant should not be granted. All the respondents appeared pursuant to said notice and the cause was tried upon the issues framed by the amended petition of claimant, and the answer thereto filed by respondents.

Claimant prevailed upon the trial in the county court, whereupon respondents appealed to the district court of Otero county. Trial in the district court resulted in judgment in favor of the respondents, and claimant brings the cause here by writ of error.

The controversy involves a consideration of the following facts: On the 23rd day of December, 1937, Emma M. Shriver, Clifford A. Conroe and Richard H. Conroe executed, and shortly thereafter acknowledged, a trust agreement, under the terms of which each of the said parties described separate pieces of property severally owned or held in joint tenancy by them, and set forth their desire and intention to provide a fund for the care and support of their mother, Ada Conroe, during her lifetime. The said trust agreement then provided:

"Now, therefore, these presents witness that we hereby jointly and severally declare, that we hold the title to said above mentioned and described property, in trust for the said Ada Conroe, for and during her natural life, with power in said Ada Conroe, to transfer and convey the same to such person or persons as she, the said Ada Conroe shall by her last will and testament, direct, but not otherwise.

"We hereby appoint said Ada Conroe, our agent, to control and manage said trust estate; to rent and receive the income therefrom; to apply said income, primarily to the payment of interest upon the incumbrances

thereon, taxes and repairs; and to use the remainder of said income for her personal support and benefit."

After reserving to themselves the right to sell or convey any of the said real estate within the lifetime of the beneficiary, the said agreement provided:

"We direct that neither the income from said trust estate, hereby provided for said beneficiary, nor the principal fund or trust property shall be liable for her debts, past, present or future; nor shall said income or trust property be subject to the right of any creditor of said beneficiary to seize the same under any writ or by any proceeding at law or in equity. And said beneficiary shall not have any power to give, grant, sell, convey, mortgage, pledge, or otherwise dispose of, incumber, or anticipate the income, or any installment thereof, or any share in the principal or property thereof, it being our will that no right of disposition of any such property shall vest in said beneficiary, except by her will as herein provided.

"Upon the death of the said Ada Conroe, cestui que trust, the trust herein created shall cease and determine, and when said trust is terminated, the trust property, as the same may exist at the death of the said Ada Conroe, whether consisting of real or personal property, or both, shall immediately vest in and become the property of the devisees and legatees named in the will of said Ada Conroe, or in the event that said Ada Conroe leaves no will, then said property shall vest in the heirs at law of said Ada Conroe, under the laws of descent of the State of Colorado, then in force."

The said Ada Conroe executed a will on December 2, 1946. On June 26, 1947, the said will was admitted to probate, the testatrix having died May 25, 1947, and Emma M. Shriver was duly appointed executrix of the said estate. The said executrix reported no assets of the estate of said Ada Conroe. The will of said deceased, who was the beneficiary under the trust agreement hereinabove mentioned, contained the following:

"First. I direct that all my just debts, except those that are secured by liens upon real estate, expenses of last illness, and funeral expenses be paid as soon as convenient after my decease.

"Second. I hereby give, devise and bequeath unto my beloved grandsons, Earl Conroe and Harold Conroe, who now reside at Caddoa, Colorado, in equal shares, the following described property, to-wit: All of the land which consists of about one acre on Main Street in North La Junta, Otero County, Colorado; and Lots 28 and 29, Block 11, Franklin Yike Addition, City of Wichita, Sedgewick County, Kansas, which I am empowered to convey by will.

"Third. I give, devise and bequeath to my children, Emma M. Shriver, Clifford A. Conroe and Richard H. Conroe all of the rest and residue of my estate, real, personal and mixed, wheresoever situate, of which I may die seized or possessed, or to which I may be entitled at the time of my decease, or which I may be empowered to convey by will, to be equally divided among them, share and share alike, in fee simple."

While the answer of respondents contained an allegation that the court had no "jurisdiction over the matters set forth in said petition," the question of lack of jurisdiction to try the issues in the estate proceeding was not urged in the trial court, nor is it argued here. The parties by express stipulation in the trial court agreed that, "This matter is submitted to the Court as an agreed case upon the proposition that the only matter for the Court to determine is whether or not Eunice Coral Johnson, as a creditor, or any other creditors, have any rights against the property remaining in the trust described as Exhibit A." Since all parties thus sought a determination of the controversy in the instant proceedings, we do not pass upon the propriety of determining the issues upon a petition filed in the estate proceedings, and shall address ourselves, as did the trial court, to the merits.

The facts were presented by stipulation of the parties, the allegations of the petition were generally admitted, and only the legal conclusions to be drawn from these facts are involved.

The trial court in ordering judgment in favor of respondents stated their position to be as follows: "It is the contention of the appellants [respondents] that the power of appointment was not exercised, and hence does not come within the rule relied upon by appellees and further that if it should be determined that the power had been exercised, the rule relied upon while the majority rule has been much criticized, and should not be adopted in Colorado."

The position of claimant was stated by the trial court to be as follows: "The position of the appellee [claimant] is that because decedent was given power in the trust agreement to dispose of the property by will to anyone she wished and that she exercised that power when she provided in the first paragraph of her will that all her just debts be paid except those secured by liens upon real estate; that the residuary clause operates as an exercise of the appointment; and further, that the property involved is liable for the debts of the deceased for the reason that she had the power to dispose of the property to whomever she wished and she did not have other property from which her debts could be satisfied; it was her duty to remember her creditors first, and that if she did not do so, equity will seize sufficient of the property to satisfy her debts before it passes to her beneficiaries named in her will."

Solution of this case involves an interpretation of the power of appointment contained in the agreement of the three children wherein they recite that their mother shall have power to "transfer and convey the same [real estate] to such person or persons as she, the said Ada Conroe, shall by her last will and testament, direct, but not otherwise." Upon the execution of a will by the said Ada Conroe the further question was presented as to

whether she exercised the power thus conferred in such a manner as to entitle claimant to subject the real estate to payment of Ada Conroe's debts upon her death. Claimant relies upon the principle of law, recognized in some jurisdictions, that property which is the subject of such a general power of appointment is, in equity, an asset for the payment of the debts of the donee's estate, to the extent that other assets of the estate are insufficient to pay them.

In order to bring this cause within the rule for which claimant contends, certain essential ingredients, upon which application of the rule depends, must be present: 1st. The power of appointment must be a general power as distinguished from a special power, since under a special power the donee is restricted to passing the property on to certain specified individuals or to a specific class of individuals. 2nd. The power of appointment must in fact have been exercised by the donee in favor of volunteers. 3rd. The assets of the estate must not be sufficient to pay the debts of the deceased donee. Admittedly the power here in question is a general power, and the fact that there were no assets in the estate also stands admitted.

This cause seems to be one of first impression in this jurisdiction. It is conceded that the rule for which claimant contends is established in many jurisdictions. Respondents contend, however, that those authorities, which deny the existence of any equitable right in creditors to proceed, for the collection of a debt, against property subject to the exercise by will of a general power of appointment by the person from whom the debt is due, is the better rule and the one which should be followed in this jurisdiction.

The trial court ruled against the claimant, and it is apparent from its order that the basis of its ruling was that the power given Ada Conroe was not exercised by her as required by the rule for which claimant contends.

## Questions to be Determined.

First: *Where a power of appointment was created, as hereinabove stated, will an exercise of that power in favor of creditors result from a statement in the will of the donee of the power that all the just debts of testatrix shall be paid?*

The question is answered in the negative. The legal results of the instrument signed by the children were essentially these: The three children retained title to the real estate; by their agreement they appointed themselves trustees thereof; they appointed the mother their agent to control and manage the property; they gave the mother power to convey the property to such "person or persons as she * * * shall by her last will and testament direct, but not otherwise"; they restrained the voluntary or involuntary alienation of her interest by her; and prevented the income from the property, or the property itself, from being subjected to the payment of debts of the mother, whether past, present or future. It is clear that the power conferred on the mother amounted to no more than authority enabling her, by will, to dispose of the interest in the real estate which at all times remained vested in the children. No property right of any kind in said land vested in the estate of the mother. *Barnard v. Moore,* 71 Colo. 401, 207 Pac. 332.

There is no presumption that the direction to pay debts, contained in the will, was in fact an exercise of the power of appointment possessed by testatrix. An intention to execute the power must be affirmatively shown, and that intention must be so clearly established that the transaction is not fairly susceptible of any other interpretation. *Emery v. Emery,* 325 Ill. 212, 156 N.E. 364. In directing the payment of debts, no mention is made of the appointive power of the testatrix, and it cannot be successfully contended that by so directing she exercised the power and appointed her creditors to satisfy claims out of the appointive estate. The Supreme

Court of Pennsylvania, in *Valentine's Estate,* 297 Pa. 99, 146 Atl. 453, under somewhat similar circumstances stated: "The will in question first directs the payment of all debts; and, since to this point no mention is made of the appointive estate, the direction means that such debts are to be paid out of testatrix's individual estate, unless the will in other parts shows a contrary intent, which the court below held it did not." See, also, *Stannert's Estate,* 339 Pa. 439, 15 A. (2d) 360.

█ In the instant case there is nothing whatever in the will to show an intent to exercise the power of appointment by the use of the words directing the payment of debts. The trial court stated that considering the trust agreement which created the power, and the will which it is claimed was an exercise of the power, and construing them together, "The only relief she [the testatrix] was warranted in extending to her creditors under the provisions of the trust agreement was to make a specific bequest to such of her creditors as she desired of such property as she should select." We are in accord with this view.

Claimant does not here directly argue that the direction to pay debts, standing alone, would show an exercise of the power of appointment. She contends that the will as a whole, and particularly paragraphs "second" and "third" thereof, shows conclusively an intent to exercise the power, and that once the power is exercised, equity will require the payment of creditors from the appointive estate under the facts here present. This leads to a consideration of our second and third questions.

Second: *In making the bequests set forth in the second and third paragraphs of her will, and by the specific references in said paragraphs to her appointive powers, was there a valid exercise of the power of appointment created by the trust agreement?*

█ Whether the power of appointment was exercised by the donee is to be determined by her intent in

making the devises for which she made provision in her will. This intent must, if possible, be ascertained from the terms of the will itself. If, considering the terms of the will, a doubt exists, resort may be had to recognized rules of construction. *Bacon v. Kiteley*, 101 Colo. 559, 75 P. (2d) 590. *McLaughlin v. Collins*, 109 Colo. 377, 125 P. (2d) 633.

The intent of Ada Conroe to exercise the power of appointment is clearly shown in the second paragraph of the will, wherein she devises two tracts of land, each of which is included in the appointive estate. In making these devises she specifically referred to the property "which I am empowered to convey by will." However, this exercise of the power of appointment can avail the claimant nothing in this action for the reason pointed out by the trial court, namely, that the devisees specifically appointed to take the fee title to the property described in said paragraph are not parties to this action, are "not before the court and their rights may not be adjudicated here."

The only parties appearing, are the three individual respondents who originally created the appointive estate, one of whom also appears as executrix of the estate. These three persons are named as residuary devisees, and in the residuary clause of the will testatrix specifically refers to the power of appointment by devising property "which I may be empowered to convey by will." The general rule governing the question of whether a power of appointment may be executed by a devisee named in a residuary clause in the will of the donee of the power is well stated in volume 41, American Jurisprudence, page 841, section 50, as follows: "The rule in nearly all jurisdictions is that in the absence of statute a power of appointment is not executed by a residuary clause in the will of the donee, *unless an intent to exercise the power clearly appears from the will.*" (Italics supplied)

In the will before us the intent to exercise the

power "clearly appears." It is contended by respondents, however, that the provisions of chapter 146, Session Laws of Colorado of 1945, prevent the exercise of such power by a devisee under the residuary clause of a will. This statute concerns the exercise of powers of appointment in relation to inheritance and gift taxes. Section 9 thereof provides: "The release or non-exercise of a power of appointment shall not constitute a taxable transfer within the provisions of Chapter 161 of the Session Laws of Colorado for 1937, as amended, relating to Gift Tax (being Chapter 75A of the 1935 Colorado Statutes Annotated, as amended). No power shall be considered to be exercised by the provisions of the residuary clause of the will of a donee of the power." It is contended that the last sentence above quoted prevents the exercise of a power of appointment under a residuary clause in a will, even though the intent so to do clearly appears.

The trial court in its conclusions of law dealing with this point, said: "The Court is further of the opinion that the contention of appellants [respondents] that a residuary clause cannot be construed as the exercise of a power is untenable where the intent to exercise the power clearly appears regardless of the statutory provisions cited." With this statement we are in full accord. It follows, therefore, that under the terms of paragraphs "second" and "third" of the will here considered, there was an exercise by the donee of the power of appointment conferred upon her by the trust agreement. However, any rights of the creditor claimant must rest upon the "third" paragraph of the will, since the devisees under paragraph "second" are not before the court.

Third: *In exercising the power of appointment by naming the original donors of the power, in whom the legal title to the property remained prior to the exercise of the power, did the donee appoint mere "volunteers" and thereby give rise to rights in her creditors?*

The question is answered in the negative. In volume 3, Tiffany Real Property (3d ed.) at page 85, section 710, the rule for which claimant contends is stated as follows: "In England, however, and also in some states, if such a power, whether testamentary or not, is executed by the donee in favor of one who pays no consideration, a 'volunteer,' the property is thereby made assets in equity for payment of the donee's debts, and the claims of creditors will take precedence of the claims of the appointees, unless there is other property of the donee sufficient to pay his debts." Thus, even under this rule, the respondents must be shown to have the status of "volunteers," before the creditor claimant is entitled to the relief sought. We adopt the words of the learned trial judge, who said, in disposing of this point: "In this case the rule is sought to be enforced against the owners of the property, and under no stretch of the imagination can they be considered volunteers. The only reason that comes to the mind of the Court why courts refuse to enforce this rule where the power is not exercised is that in such a case it is sought to be enforced against individuals who are not volunteers." We consider this statement a complete answer to the argument that respondents were mere volunteers. On claimant's own theory she accordingly fails to bring the case within the rule for which she contends.

█ Fourth: *In this jurisdiction is the rule to be adopted that, where a general power of appointment is exercised by the donee in favor of a volunteer, the appointive property becomes assets in equity for payment of the donee's debts?*

In paragraph second of the will here involved, there appears to have been an exercise of the power of appointment to beneficiaries who were volunteers. While an answer to the question is not essential to an affirmance of the judgment, for the reasons already stated, the question is presented by this record, and we deem it advisable to give the answer for the guidance of coun-

sel in determining possible future action with relation to those who took property as volunteers under the terms of paragraph second of the will. Our considered opinion is that the rule stated in the question should not be adopted in Colorado. We believe that better reasoning is to be found in the cases from jurisdictions which do not recognize the rule: *Rhode Island Hospital Trust Co. v. Anthony,* 49 R. I. 339, 142 Atl. 531, 59 A.L.R. 1501; *In Matter of Trust of Howald,* 65 Ohio App. 191, 29 N.E. (2d) 575; *Fidelity-Philadelphia Trust Co. v. McCaughn,* 34 F. (2d) 600 (see, 97 A.L.R. 1072); *Balls v. Dampman,* 69 Md. 390, 16 Atl. 16; *Cutting v. Cutting,* 86 N. Y. 522 (see, 59 A.L.R. 1523); *Boyle v. Smyth Co.,* 248 Ill. App. 57 (see, 97 A.L.R. 1072); *St. Matthews Bank v. De Charette,* 259 Ky. 802, 83 S.W. (2d) 471, 99 A.L.R. 1146. For a discussion of the opposite view see *United States v. Field,* 255 U. S. 257, 41 Sup. Ct. 256, 65 L. Ed. 617. In volume 3, Tiffany Real Property (3d ed.) at page 86, we find the following comment: "The doctrine has been criticized as operating to defeat the intention of the donor of the power and of the donee as well, and as ignoring the distinction between powers and property, and has been repudiated or questioned in a steadily increasing number of jurisdictions."

We recognize the right of the donor of a power of appointment to condition his bounty as he sees fit, and the creditors of the donee of the power have no reason to complain that the donor did not give his bounty to them.

The judgment is affirmed.