478 A.2d 879

**In the Matter of the ESTATE OF George B. RUDY, Jr., Deceased.**

**Appeal of Mary C. LAU and Margaret A. Lau, Exceptants.**

Superior Court of Pennsylvania.

Argued April 4, 1984.

Filed July 13, 1984.

Petition for Allowance of Appeal Denied Jan. 7, 1985.

Lewis P. Sterling, York, for appellant.

Byron H. LeCates, York, for Williams, participating party.

Robert M. Strickler, York and Lawrence Barth, Deputy Attorney General, for The Visiting Nurse, participating party.

Before WICKERSHAM, OLSZEWSKI and HOFFMAN, JJ.

OLSZEWSKI, Judge:

This is an appeal from the final decree of the Orphan's Court of York County dismissing appellant's exceptions to the Chancellor's decree nisi and adjudication. For the reasons below, we affirm.

On June 23, 1980, George B. Rudy died, leaving a will dated April 1, 1976, and a codicil thereto dated February 9, 1979. Item III of the will stated: "I give my personal

effects and all items of Rudy Family memorabilia ... to ... George W. Williams, III [appellee]...." Item VIII of Mr. Rudy's will bequeathed all of his real property, "together with the contents thereof", to his friends, Mary and Margaret Lau [appellants]. The residue of the estate was placed in trust, with the income thereof payable perpetually to several charitable organizations, among them the York College of Pennsylvania.

Appellants contest the disposition of certain items found locked in a filing cabinet on the deceased's premises. These items, with an estimated fair market value well in excess of $500,000 include: municipal bonds, corporate stock, a collection of rare coins, several valuable watches, a sizable amount of cash and an assortment of fine jewelry.

Shortly after Mr. Rudy's death, a proposed account and distribution was filed for audit by the executor of the estate. The Chancellor held that the above mentioned assets passed to appellee as "personal effects" under Item III of the will. Appellants excepted to this finding; they claimed these assets were "contents" of Mr. Rudy's home that belonged to them by virtue of Item VIII of the will. The court en banc, agreeing with the logic of the Chancellor, dismissed appellants' exceptions and awarded assets to appellee.

Appellants challenge the validity of that disposition. They raise myriad substantive issues. Before we address those issues, we must resolve appellants' sole procedural claim.

I.

█ Appellants argue that the lower court erred when it allowed appellee to file an untimely objection to the account. Appellee filed the objection after the statutory period for such filing had expired. The record reveals that the account had originally been filed for audit on July 1, 1981. Before this audit, appellants filed several objections challenging the proposed account. At the call of the audit list, the audit was continued pending disposition of those objec-

tions. Thereafter, on July 17, 1981, appellee filed his objections to the account. Appellants now contend that this latter filing was untimely under Rule 70.2 and 70.3 of the local rules of court in York County.[1] We do not agree.

In *Gertzens Estate*, 18 Dist. 925 (1909), it was specifically held that where the filing of exceptions to an adjudication has suspended confirmation thereof, other exceptions may be filed nunc pro tunc after the time for filing exceptions had expired.[2] Here, appellants' filing of objections delayed the audit beyond its original call date. Under *Gertzens Estate, supra,* appellee thus became entitled to file objections after the original deadline for filing had expired.[3] Therefore, we will not view appellees objections as untimely.

## II.

This procedural obstacle behind us, we focus on appellants' main contentions. Appellants argue that the Chancellor erred in holding that testator's bequest of the "contents" of his house did not include the cash, stock, bonds, rare coins, jewelry and watches found therein at the time of his death.

**1.** The York County Local Rules of Court provide as follows: "Rule 70.2 Objections to Account—Filing—Service at Copy. (a) Objections may be filed as of course, with the clerk, on any day prior to the session of court when the account objected to is listed for audit, or at, but not later than, such session."

Rule 70.3 provides: Objections to Audit—Continued Audit. "When objections to an account have been filed, the audit of the account will be continued, at the time of the call of the audit list, and at that time a date will be fixed by the court for auditing the account and hearing the objections."

**2.** Although *Gertzens Estate, supra,* deals with exceptions filed to an adjudication, whereas the instant case deals with objections filed to an account, we feel the principle contained in *Gertzen* is equally controlling in this instance.

**3.** Furthermore, the Chancellor found that none of the parties would be taken by surprise or prejudiced by appellee's late filing. From this finding, he reasoned that the "interests of equity and justice" dictates that appellee's objections be heard at the same time and in the same manner as those of appellants. We agree with this reasoning and do not feel the Chancellor exceeded his discretion in so holding.

The Chancellor, in his decision, relied primarily upon *McCartney's Estate*, 61 D. & C. 112 (1947), where it was held that a bequest of a home and the entire contents thereof, did not include bonds, stock certificates, insurance policies, gold coins, and other personal effects of the testator. We find this case on point with the instant matter.

Similarly, our Supreme Court recently held that a devise of a house "as well as all furnishings within said house", did not include stock certificates, a vehicle title, and a mortgage payable to testator which were found locked in a safe in the devised premises. *In re Estate of Baker*, 495 Pa. 522, 434 A.2d 1213 (1981).[4]

In light of this explicit authority, we hold that the Chancellor properly concluded that testator's bequest of the "contents" of his house did not include the cash, stock, bonds, old coins, watches and jewelry found therein.[5]

Appellants next contend that the testimony of testator's lawyer, secretary, doctor, banker and accountant, was improperly admitted as evidence of testator's subjective interest.[6]

It is well established that extrinsic evidence is not ordinarily admissible to vary, contradict, or add to the terms of a will to show a different intention on the part of the testator than that disclosed by the language of the will. *See Estate of Felice*, 487 Pa. 342, 409 A.2d 382 (1979);

4. *See also Lamb Estate*, 445 Pa. 323, 285 A.2d 163 (1971) (holding that a devise of a house "including the contents thereof" included the furniture and furnishings but not a savings account, checking account, saving bond certificates or uncashed checks. The nature of those assets resembles that of the assets involved here.

5. Furthermore, testimony at trial established that testator had transferred the stocks and bonds from his bank to his personal residence solely for his personal convenience. This fact further supports the Chancellor's conclusion that the testator did not intend for these items to become part of the "contents" of his personal residence.

6. This testimony revealed that testator had set up a revocable trust for the benefit of appellants. This trust, which was created in July 1961, had been amended on June 30, 1975—a few months prior to the time testator had signed his present will.

*Dinkey Estate,* 403 Pa. 179, 168 A.2d 337 (1961). However, when the court charged with construction of a will cannot, in good faith, distribute the estate by reference to that document alone, then it is proper and necessary to refer to sources beyond the will itself. *Soles Estate,* 451 Pa. 568, 304 A.2d 97 (1973).

■ In *Soles Estate, supra,* our Supreme Court specifically upheld the admissibility of extrinsic evidence in a similar setting. "[T]he court must 'place itself in the armchair' of the testatrix and examine not only the document she designated as her will, but also the circumstances surrounding her at the time she did so." 451 Pa. at 574, 304 A.2d at 100 (citations omitted) (emphasis added). The trial judge in the instant case felt the offered testimony would aid in distributing the testator's estate. Since the testimony did not impermissibly intrude into the subjective intent of the testator, but rather referred only to the circumstances attendant to the execution of testator's will and codicil, we find no error in its admission.

■ Appellants next argue that the court erred in refusing to find a conflict of interest where appellee and a residuary beneficiary were both represented by the same counsel.

The source of the alleged conflict is a cache of gold coins located in a safe deposit box. The coins were claimed by appellee as part of testator's "personal effects" under Item III of the will. When this claim failed, the coins passed to the York College of Pennsylvania, the designated charitable beneficiary.

We can think of no practical reason why appellants raise such a meaningless argument when it is perfectly clear that they have no possible claim of right to the property in question.[7]

Furthermore, we fail to see even a potential for conflict when the opposing parties—appellee and the York College

---

7. Indeed, appellants openly admit in their brief that they are not in any righteous position to challenge the disposition of this specific item of testator's estate.

of Pennsylvania—have stipulated that the coins should undoubtedly pass to appellee.

Appellants final argument focuses on a particular factual finding of the lower court, namely, that testator was occasionally irritable, confused, forgetful, and sometimes incapable of transacting his business affairs. They argue that this finding was not supported by sufficient evidence.

▉▉▉ It is well established that a judge's finding of fact, approved by the court en banc, is entitled to the weight of a jury's verdict and will not be disturbed on appeal if supported by adequate evidence. *See In re Estate of DiPietro*, 306 Pa.Super. 238, 452 A.2d 532 (1982) (and cases cited therein). Instantly, the trial judge based his findings on the testimony of Dr. Langer, the deceased's personal physician. Dr. Langer testified that he had had the opportunity to examine testator on several occasions. During these examinations, he noted several distinct mental characteristics displayed by testator. These characteristics included forgetfulness, loss of memory and confusion. This testimony, based upon personal observance, provided a sufficient basis to support the lower court's finding. Appellants final assignment of error is without merit.[8]

## III.

We are fully aware of the complexities facing trial judges as they attempt to dispose of estates in accordance with the terms of given wills. Instantly, we feel the Chancellor, as well as the court en banc, did an excellent job in interpreting the provisions of George Rudy's will and distributing his estate accordingly. We therefore affirm the final decree dismissing appellants' exceptions to the Chancellor's decree nisi and adjudication.

Decree affirmed.

8. Appellants also raise an additional argument that the Chancellor erred in failing to admit into evidence, bank safety deposit records of the testator. The court en banc accurately noted that appellants, by way of stipulations, had initially agreed to certain facts concerning the testators safe deposit box. Appellants are now forclosed from introducing additional evidence to contradict the facts admitted in their prior stipulations.