In the Matter of the ESTATE OF Audrey E. LEWIS, a/k/a Audrey E.M. Lewis, deceased.

Julie A. Marsh, individually, Petitioner–Appellant,

v.

Delta Gamma Anchor Center for Blind Children, Intervenor–Appellee.

No. 03CA0368.

Colorado Court of Appeals, Div. IV.

April 22, 2004.

Jack Kintzele, Denver, Colorado, for Petitioner–Appellant.

Holland & Hart, L.L.P., Robert E. Benson, Elizabeth A. Phelan, Denver, Colorado, for Intervenor–Appellee.

Opinion by Judge LOEB.

In this probate case, petitioner, Julie A. Marsh, appeals the trial court's order declaring that stock certificates, jewelry, and coins found in the home of the decedent, Audrey E. Lewis, were part of the decedent's residuary estate. We affirm.

The decedent wrote a holographic will that stated:

> 3060 So. Leyden [decedent's house] & its entire contents are to go to Julie to be kept or disposed of as she sees fit. Special attention to be paid to the Silver, Crystal, Haviland China and antiques in the China Cabinet, tho [sic] many items are still missing at this time.
>
> My jewelry & coins are temporarily at Norwest Bank at 1745 Broadway. I have been trying to locate Katherine Riedesel last known of in the San Francisco area and her brother Dr. William Riedesel last known to be in St. Louis. I intend to be more specific at a later date.
>
> After any debts, bills, fees etc. are paid, the balance of my estate is to be divided thus. . . .

The decedent then listed various percentages of the residuary estate to be left to a college fund for petitioner's son and certain charities. The decedent did not specifically mention stock certificates in the will. Petitioner was named personal representative.

Upon decedent's death, stocks certificates, jewelry, and coins, together valued at approximately $180,000, were found in her house. The will was admitted to probate, and petitioner, as the personal representative, asked for guidance from the court regarding distribution of the stock certificates, jewelry, and coins. The district court found that these items were part of the residuary estate.

Petitioner, in her individual capacity as a devisee under the will, brought this appeal, and the Delta Gamma Anchor Center for Blind Children, one of the charities designated to receive the residuary estate, intervened.

I.

The main issue on appeal is whether the stocks, coins, and jewelry found in the house at the time of death are considered "con-

tents" of the house. Petitioner contends that the plain language of the will indicates that the decedent's intent was to include all items found on the premises as "contents." The intervenor contends that the decedent intended the "contents" of the house to be limited to personal property typically used in the house for its functioning and enjoyment and that stocks, jewelry, and coins are not that type of personal property. We agree with the intervenor.

In construing wills, we must ascertain the intent of the testator from the language of the will itself and, if the intent is not contrary to some positive rule of law or public policy, give it effect. *In re Estate of Paulsen*, 113 Colo. 373, 379, 158 P.2d 186, 189 (1945); *In re Estate of Peppler*, 971 P.2d 694, 696 (Colo.App.1998). Because construction of a will is a question of law, a reviewing court is not bound by the district court's construction. *In re Estate of Peppler, supra.*

Whether the "contents" of a house include stocks, jewelry, or coins found in the house at the time of death is an issue of first impression in Colorado.

However, courts of numerous jurisdictions have considered this issue and have articulated a general rule that, unless a contrary intention is clearly expressed in the will, a devise of a house and its contents does not include items such as stock certificates, bank accounts, checks, insurances policies, deeds, mortgages, and securities which are found in the house. The rule has also been applied to exclude jewelry and coins from the definition of "contents."

For example, in *In re Estate of Lawson*, 792 So.2d 977 (Miss.2001), the court recited the general rule stated above and held, "The gift of the 'contents' of a home is limited to those things ordinarily identified with a home. The term 'contents' when referring to a household customarily and ordinarily encompasses articles of personal property typically used in and about the household...." *In re Estate of Lawson, supra*, 792 So.2d at 979 (citation omitted). The court specifically held that securities are not included within the term "contents" simply because they "fortuitously happen to be on the premises at

the time of the decedent's death." *In re Estate of Lawson, supra*, 792 So.2d at 980; *see also Souder v. Johnson*, 501 So.2d 745, 746 (Fla.Dist.Ct.App.1987)(devise of house and its "contents" did not include stock certificates or proceeds from financial institution passbooks found on the premises); *Linson v. Crapps*, 204 Ga. 264, 49 S.E.2d 523, 524 (1948)(devise of a home and "the contents of said home" did not include government bonds found in dresser drawer in the home at the time of death); *In re Estate of Shoptaugh*, 482 N.E.2d 1142, 1145 (Ind.Ct.App.1985)(six stock certificates found in decedent's house held not included in devise of house and "all contents"); *In re Estate of Lamb*, 445 Pa. 323, 285 A.2d 163, 164 (1971)(real property and "contents thereof" did not include savings and checking accounts, savings bank certificates, and uncashed checks); *In re Estate of Rudy*, 329 Pa.Super. 458, 478 A.2d 879, 881 (1984) (testator's bequest of the "contents" of his house did not include the cash, stocks, bonds, old coins, watches, and jewelry found therein).

Here, we conclude that the language of the will reflects the decedent's intent that the "contents" of her home not include the stock certificates, jewelry, and coins. We are persuaded by the general rule as articulated in numerous cases and therefore elect to adopt and apply it here.

Within the paragraph in the will conveying the house and its contents to petitioner, the decedent specifically referenced silver, crystal, china, and antiques, thus indicating that she perceived "contents" to be items such as these, which are commonly associated with the use and enjoyment of a house. *See Estate of Lawson, supra*, 792 So.2d at 980 (silverware and glassware included in "contents" as items typically associated with use and enjoyment of a house). And, given the significant value of the stocks, jewelry, and coins, the decedent's failure to mention these items in this paragraph, while specifically mentioning other household items, further supports the conclusion that they were not considered part of the "contents" of the house.

Other language in the will also specifically supports excluding the jewelry and coins

from the "contents" of the house. According to the will, when it was written, the jewelry and coins were not in the house, but were at Norwest Bank. The decedent referred to the location of the jewelry and coins in a separate paragraph and indicated an intention to dispose of these items at a later date. *See Wright v. Dzienis*, 77 N.J.Super. 455, 187 A.2d 8, 9 (1962) ("personal jewelry, articles of personal adornment, and the like, do not pass under a bequest of 'household chattels' simply because they happen fortuitously to be in the premises at the time of decedent's death"); *In re Estate of Rudy, supra*, 478 A.2d at 881 (neither jewelry nor coins were included in real property "together with the contents thereof").

We also note that, because there is a residuary devise, we are not faced with the possibility of intestacy. *See In re Estate of Jenkins*, 904 P.2d 1316, 1321 (Colo.1995)("[I]t is a well settled rule of construction that in determining the testator's intent, courts should adopt a construction that avoids partial intestacy."); *In re Estate of Paulsen, supra* (savings accounts included in devise of "personal property," in part because to conclude otherwise would create an intestacy); *see also In re Estate of Lawson, supra* (devise of a house and its contents does not include stock certificates and bonds, despite partial intestacy).

Indeed, the will designates several specific devisees to receive the residuary estate. Interpreting the will to give the stocks, jewelry, and coins to petitioner would reduce the value of this residuary estate by approximately $180,000. The decedent designated several charities as residuary devisees and allotted specific percentages of the residuary estate to each devisee. It is therefore clear from the language of the will that the decedent intended the residuary beneficiaries to receive a substantial amount of money. It would be contrary to this intent to convey the items at issue here to petitioner and thereby significantly deplete the residuary estate. *See In re Estate of Lamb, supra*, 285 A.2d at 164 (residuary estate would be significantly depleted, frustrating decedent's charitable intent, if bank accounts found in home were considered "contents" of home).

We disagree with petitioner that *In re Estate of Paulsen, supra*, compels a different result. There, the court stated that the term "personal property" in a will includes "credits, savings-bank deposits, notes, bonds, the proceeds arising from the sale of realty, and the right to a certificate in foreclosure." *In re Estate of Paulsen, supra*, 113 Colo. at 384, 158 P.2d at 191 (quoting 3 *Page on Wills* § 964, at 44 (Lifetime ed.)). Here, however, we are not dealing with a term as broad as "personal property" but rather with the narrower term "contents" of a residence.

Similarly, the additional out-of-state authorities tendered by petitioner at oral argument are all distinguishable because the language of the wills in those cases differs from the language of the will at issue here. *See, e.g., Winkler v. Woodruff*, 182 A. 409 (Del.Ch. 1935)(broad language in devise of real estate and "all the furniture, household furnishings and personal property of any kind whatsoever in the said above mentioned property" included cash, shares of stock, jewelry, and wearing apparel found on the premises); *Cuppett v. Neilly*, 143 W.Va. 845, 105 S.E.2d 548, 553 (1958)(devise of home "with all the furniture and contents including linens and silverware" included jewelry in the home, where, unlike here, will did not contain other specific provisions referencing jewelry and indicating decedent's intent that jewelry was not considered as contents of home), *overruled on other grounds by Watson v. Santalucia*, 189 W.Va. 32, 427 S.E.2d 466 (1993); *In re Treat's Estate*, 253 Wis. 527, 34 N.W.2d 685, 687 (1948)(bequest of "furniture, household goods, ornaments and personal effects located in my dwelling" included testatrix's jewelry).

Finally, petitioner's argument notwithstanding, the court's admonition in *Paulsen* not to place too much reliance on precedents is not at issue here, where the language of the will evidences an intent consistent with the general rule that the "contents" of a house do not include stock certificates, jewelry, and coins.

Accordingly, we conclude that the district court correctly included in the residuary estate the stock certificates, jewelry, and coins

found in the decedent's house at the time of death.

## II.

Petitioner also contends that her attorney fees for the proceedings in the district court and on appeal should be paid from the estate. We disagree.

As a general rule, where an action is necessary to discern the proper construction of a will, the attorney fees should be paid by the estate for the party instituting the action. *In re Estate of Fryer*, 874 P.2d 490, 492 (Colo.App.1994). However, attorney fees are only proper where the estate benefits from the action. *In re Estate of Coors*, 140 Colo. 343, 346, 344 P.2d 184, 185 (1959). Generally, attorney fees are awarded only to the personal representative. *See* § 15–12–720, C.R.S.2003 (fees allowed to personal representative); *In re Estate of Fryer, supra*. However, a beneficiary may be awarded attorney fees where the action benefits the estate by preventing an unlawful distribution or where the beneficiary is responding to an action instigated by another. *See Tarr v. Newby*, 146 Colo. 296, 302, 361 P.2d 622, 625 (1961); *In re Estate of Coors, supra*. Where a beneficiary's motive is financial gain, an award of attorney fees from estate funds is inappropriate. *In re Estate of Fryer, supra*.

Here, the record does not indicate that the personal representative requested attorney fees in the district court, and thus there is no order for us to review regarding such a request. *See Citizens Bank v. Kruse*, 691 P.2d 1143, 1144 (Colo.App.1984)(where motion in trial court specifically challenged award of attorney fees, issue was preserved for appeal).

In any event, the personal representative is the party who would be granted attorney fees for the action in the district court, and the personal representative, as such, is not a party to this appeal. *See In re Marriage of Pontius*, 761 P.2d 247, 250 (Colo.App.1988)(because father was not party to appeal, court would not address portion of order requiring him to be jointly and severally liable for mother's attorney fees).

We also conclude that petitioner is not entitled to an award of attorney fees on appeal. Petitioner brought this appeal in her capacity as an individual devisee under the will, not as the personal representative, and the appeal is intended to benefit her alone. *See In re Estate of Fryer, supra*. Moreover, she was not responding to an action by another, but rather is simply challenging the district court's ruling.

Under these circumstances, we conclude that granting petitioner attorney fees on appeal from the estate is not warranted.

Order affirmed.

Judge CASEBOLT and Judge GRAHAM concur.